UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CANDICE CLARE, BRENT FREBURG, JON CROTEAU, MATT CERVASIO, NICOLE LONG, SHANNON FOLEY, JALEN CARTER and DALLIN HARDY on behalf of themselves and the Putative Class, <br><br> Plaintiffs, <br><br> v. <br><br> MAZDA MOTOR OF AMERICA, INC. and MAZDA MOTOR CORP., <br><br> Defendants. | Case No. <br><br><br><br> Civil Action <br><br> CLASS ACTION COMPLAINT AND JURY DEMAND |

Plaintiffs, Candice Clare, Brent Freburg, Jon Croteau, Matt Cervasio, Nicole Long, Shannon Foley, Jalen Carter, and Dallin Hardy by their attorneys, Nagel Rice LLP, on behalf of themselves and all others similarly situated, make the following allegations on personal knowledge and information and belief:

I.   NATURE OF THE ACTION

1.   Plaintiffs bring this action for actual damages, equitable relief, including restitution, injunctive relief, and disgorgement of profits, and all other relief available on behalf of themselves and all similarly-situated individuals (the "Class") who own, lease or have owned or have leased 2019-2020 CX-5 Skyactiv-G 2.5T vehicles produced before June 9, 2020, 2016-2020 CX-9 Skyactiv-G-2.5T vehicles produced before June 9, 2020, 2018-2020 Mazda 6 Skyactiv-G 2.5T vehicles produced before March 26, 2020 and 2019-2020 Mazda6 Skyactiv-G2.5T produced before March 21,

2020 with Mexico Specifications (hereinafter, the "Class Vehicles") manufactured and/or sold by the Defendant, Mazda Motor of America, Inc. (herein "Mazda" or "Defendant").

2.     All the claims asserted herein arise out of Mazda's design, manufacture, and warranting of the Class Vehicles, as well as Mazda's advertising, promoting, marketing, distributing, selling, and leasing of the Class Vehicles as a dependable, safe, and reliable vehicles.

3.     The Class Vehicles are designed and manufactured with a uniform manufacturing and design defect (herein the "Defect") which results in coolant leaks at the cylinder head in the area around the exhaust manifold. Mazda has issued five separate bulletins since October 15, 2021 related to this problem and how to repair it as well as a Service Advisory indicating a parts shortage regarding the cylinder head assembly. However, in many instances partial or total engine replacement is the only fix, and it is possible that the same problem will occur again with the replacement engine, since it is the same as the original one.

4.     What makes matters worse, is that it generally takes several years for the Defect to manifest. The cost to repair or replace the engine results in repair bills in the range of $5,000 to $10,000 which are routinely charged to the customer because the basic 36,000 mile warranty has expired by the time these expensive

repairs must be performed, or else the vehicle will be rendered inoperable.

5.     There is no requirement in the owner's manual or service and warranty information booklet that the cylinder head around the exhaust manifold should be inspected or maintained in any way when the vehicles are brought in for service.

6.     Clearly these are not parts that Class Vehicle purchasers anticipate breaking during the expected useful life of the Class Vehicles.  However, as will be detailed below, these parts have been failing at an extremely high rate which would justify a voluntary extension of the warranty for these parts, or alternatively, the institution of a recall.

7.     This Defect is inherent in the design and/or manufacture of the Class Vehicles. As a result of the Defect, Plaintiffs and the other members of the Class have been subject, and continue to be subject, to a potential safety risk if the vehicle shuts down without warning while on a busy road.

8.     Defendants knew or should have known before the time it sold the first Class Vehicle, that the Class Vehicles contained the Defect. Defendants had sole and exclusive possession of this knowledge at or before the time it sold the first Class Vehicle, at the time it made repairs outside the warranty and charged consumers for those repairs, and until quite recently has remained

in sole and exclusive possession of virtually all information regarding the Defect.

9.     Defendants concealed and failed to disclose the Defect, both at the time of sale or lease of the Class Vehicles either as new or certified pre-owned vehicles and on an ongoing basis, including but not limited to when the Class Vehicles were brought in for service. The Defect exposes drivers and occupants of the Class Vehicles, as well as others who share the road with them, to an increased risk of accident, injury, or death.

10.     At all times, Defendants concealed the Defect from and/or failed to disclose it to Plaintiffs, the other members of the Class and all others in the chain of distribution. Defendant also failed to remove the Class Vehicles from the marketplace or take appropriate remedial action. Instead, Defendants sold and serviced the Class Vehicles, and continue to sell and service the Class Vehicles, even though it knows and knew, or was reckless in not knowing, that the Class Vehicles contained the Defect, and that such failure would ultimately result in the inability of Plaintiffs and the other members of the Class to use their vehicles for their intended purpose during the time Plaintiffs and the other members of the Class reasonably expected they would have use of their vehicles. The Defect subjects Plaintiffs and the other members of the Class to an increased risk of accident, injury, or death as well as expensive repairs.

11.  Defendants omitted material information regarding the Defect from its marketing, advertising, sale, and lease of the Class Vehicles.

12.  The Defect has caused the Class Vehicles to fail prematurely, whether within or outside of the applicable warranty periods.

13.  Many owners and lessees of the Class Vehicles have complained in public forums, on the NHTSA website and to Mazda dealerships about the Defect and the specific problems it causes and have requested that Defendants address and remedy the Defect.

14.  The extensive number of customer complaints, communications with dealers and service technicians, discussions in on-line forums, and the repeated issuance of updated Technical Service Bulletins establish that Mazda knew of the Defect prior to the issuance of TSB 01-013/21 issued on October 15, 2021, entitled "Coolant Leaks at Cylinder Head". A TSB is not issued by a vehicle manufacturer unless the manufacturer learns of numerous occurrences of an unanticipated problem and goes through the process of investigating and creating a repair procedure. This occurs well before a TSB being issued.

15.  This TSB was sent to dealers in the United States, but was not disclosed to the general public or class members. Mazda concealed this information from the public and placed and continued

to place the Class Vehicles in the stream of commerce knowing that class members would be adversely affected.

16.  As a direct and proximate consequence of Mazda's active and ongoing concealment and omission of the Defect, Plaintiffs and the other members of the Class purchased, leased, and currently own or lease defective vehicles and have incurred damages thereby.

17.  Had Plaintiffs and other members of the Class known of the Defect at the time of purchase or lease, they would not have bought or leased their vehicles, or would have paid substantially less for them. Each Plaintiff and Class member has suffered an ascertainable loss resulting from Mazda's omissions and/or misrepresentations associated with the Class Vehicles.

18.  Plaintiffs were provided with information about the characteristics, safety and high quality of the Class Vehicles both at the dealerships where they purchased the Class Vehicles and through Mazda's extensive advertising campaigns regarding quality and safety as intended by Mazda. However, no Plaintiff received information about the coolant leaks at the cylinder head around the exhaust manifold prior to purchasing the vehicle.

19.  Plaintiffs seek actual damages, injunctive relief, restitution and/or disgorgement of profits, statutory damages, attorneys' fees, costs, and all other relief available to Plaintiffs and the Class.

## II.  <u>PARTIES</u>

20.  Plaintiff Candice Clare is New Jersey citizen who resides in Cliffwood, New Jersey.

21.  Brent Freburg is an Indiana citizen who resides in Indianapolis, Indiana.

22.  Plaintiff Jon Croteau is a New Hampshire citizen who resides in Webster, New Hampshire.

23.  Plaintiff Matt Cervasio is a Pennsylvania citizen who resides in Tresckow, Pennsylvania.

24.  Plaintiff Nichole Long is a Georgia citizen who resides in Roopville, Georgia.

25.  Plaintiff Shannon Foley is a Virginia citizen who resides in Manakin Sabot, Virginia.

26.  Plaintiff Jalen Carter is North Carolina citizen who resides in Greensboro, North Carolina.

27.  Plaintiff, Dallin Hardy, is a Texas citizen who resides in Justin, Texas.

28.  Defendant Mazda Motor North America, LLC ("Mazda"), is a California corporation with its principal place of business at 200 Spectrum Center Drive, Irvine, California 92618.

29.  Defendant Mazda Motor Company ("MMC") is the parent company of Mazda and is located in Hiroshima, Japan.

30.  At all relevant times, Defendants were engaged in the business of marketing, advertising, distributing, selling, and

warranting automobiles, other motor vehicles and motor vehicle components in New Jersey and throughout the United States of America. Defendants drafted and published the owner's manual and service and warranty information materials and acted as the warrantor of vehicles constructed by the Defendants which are sold in the United States.

**Plaintiffs' Experiences**

31. On March 19, 2018 Candice Clare ("Clare") purchased a brand new  Mazda CX9, VinJM3TCBDY4J0209511 from Valley Stream Mazda for a purchase price of over $30,000. The vehicle has always been registered in New Jersey.

32. Unbeknownst to Clare at the time of purchase, the Class Vehicle was built with the Defect rendering the vehicle subject to cracking and leaking Cylinder Heads.

33. Defendants engaged in unfair, negligent and deceptive conduct in designing, manufacturing, marketing, selling and servicing Class Vehicles with the Defect which has caused Clare to suffer a loss in value as to the Class Vehicle.

34. In January 2024 when the vehicle had approximately 107,000  miles she began to experience problems with the vehicle, including experiencing low coolant, although there was no coolants found under the vehicle. After bringing the vehicle in for service at Open Road Mazda in East Brunswick, New Jersey and paying $189.99 plus tax out of pocket for a diagnosis of the problem, she learned

that the cylinder heads were cracked and an engine replacement was recommended at a cost of $11,849.85. Clare still owed approximately $6,700 on the vehicle but was not willing to incur such a large expense and no longer trusted the vehicle, so she traded it in for another brand vehicle. Had the vehicle not been manufactured with the coolant leak defect she would have received more for her trade in.

35.    Prior to her purchase, Clare considered the safety, fuel economy and reliability of the Class Vehicles, the features important to her, which was the subject of Mazda's marketing of the Class Vehicle.

36.    Clare also reviewed the Monroney sticker that Mazda placed on the window prior to her purchase, which advertised the Class Vehicles features, price, specifications, equipment, warranty, crash test ratings and gas mileage. Clare relied on the representations contained on the window sticker when deciding to purchase the Class Vehicle. The Monroney sticker did not disclose that the Class Vehicle possessed the Coolant Leak Defect. None of the representations received contained any disclosure related to the Defect.

37.    Had Mazda disclosed that this vehicle contained the Defect, Clare would not have purchased the vehicle, or would have paid significantly less for the vehicle.

38.  On March 3, 2021, Brent Freburg ("Freburg") purchased a pre-owned 2018 Mazda  CX-9, VIN JM3TCBDYXJ0209237 with 30,805 miles from Carmax in Carmel, Indiana at a purchase price of $25,998 prior to sales tax. The vehicle was bought for personal use.

39.  Unbeknownst to Freburg at the time of purchase, the Class Vehicle was built with the Defect rendering the vehicle subject a crack in the Cylinder Head. Defendants engaged in unfair, negligent and deceptive conduct in designing, manufacturing, marketing, selling and servicing Class Vehicles with the Defect which has caused Freburg to require expensive repairs and has diminished the value of the Class Vehicle.

40.  On March 20, 2024, when the vehicle had 77,188 miles, Freburg was on a family vacation in-Indiana when his CX-9 Instrument cluster and Infotainment screen showed an error: "Engine Overheating! Stop in a Safe Place as Soon as Possible". He immediately pulled over the vehicle, and checked to find that the coolant reservoir was empty. He subsequently had a local mechanic shop diagnose the issue where it was found that the Cylinder Head was cracked, and coolant had been seeping into the Cylinders via this crack. The mechanic replaced the cylinder head and gaskets and other necessary parts with Mazda OEM parts and repaired the vehicle. It was determined that the engine block had not been warped or otherwise impacted so a full engine replacement was not required. The repairs cost approximately $2500 out of pocket.

41.   Below are photos from the incident and the removed parts:











42.  Prior to his purchase, Freburg considered the safety, fuel economy and reliability of the Class Vehicles, the features important to him, which was the subject of Mazda's marketing of the Class Vehicle. None of the marketing materials reviewed by Freburg disclosed that the Class Vehicle possessed the Defect. None of the representations received contained any disclosure related to the Defect.

43.   Freburg first learned of this issue when he experienced the defect first hand. He subsequently looked online and learned that it was a common problem.

44.   Had Mazda disclosed that this vehicle contained the Defect, Freburg would not have purchased the vehicle, or would have paid significantly less for the vehicle.

45.   On February 13, 2023, Jon Croteau ("Croteau") purchased a 2016 Madza CX-9 VIN JM3TCBCY2G0121275 from Auto World LLC in Manchester, New Hampshire for a purchase price of approximately $17,000. At the time of purchase the vehicle had 129,380 miles. Croteau purchased the Class Vehicle for personal use.

46.   Prior to his purchase, Croteau considered the safety, fuel economy and reliability of the Class Vehicles, the features important to him, which was the subject of Mazda's marketing of the Class Vehicle.

47.   Unbeknownst to Croteau at the time of purchase, the Class Vehicle was built with the Defect rendering the vehicle subject to a crack in the Cylinder Head. Defendants engaged in unfair, negligent and deceptive conduct in designing, manufacturing, marketing, selling and servicing Class Vehicles with the Defect which has caused Croteau to require expensive repairs and has diminished the value of the Class Vehicle.

48.   On February 23, 2024, when the vehicle had approximately 146,690 miles Croteau noticed the smell of coolant as his wife

pulled into the driveway in the Mazda. He checked to see if there was a leak on the ground and there none. He then checked the overflow reservoir, and it was at the low mark, so he added coolant to the reservoir and checked the radiator. The radiator was full, so he checked to see if there were any engine lights or messages on the dash and there were none.

49.   He made an appointment at Grappone Mazda in Concord New Hampshire for the following Tuesday and did not drive the car again until Tuesday morning to go to the dealership approximately 15 miles away. Croteau monitored the engine temperature the whole way. Grappone sent the Croteau's a video of the initial inspection showing coolant in the engine bay and stated that it was the "cracked cylinder head issue" and that it would require a replacement of the cylinder head. The cost was estimated at $5600 if nothing else was found. Croteau paid $170 up front for a diagnosis fee.

50.   Croteau did some investigating online and discovered the TSB mentioning this issue. He then asked Grappone to submit a case for a goodwill repair since they had no warranty and the original manufacturer's warranty had expired. Croteau submitted everything to Mazda that they asked for and after two weeks, they called and said they were not covering the replacement "due to age and mileage."

51.   Croteau then had the vehicle towed to AutoWorld in Manchester, New Hampshire and authorized them to do the repairs. He did not get the vehicle back until April 13, 2024 at a cost of $5,727.07.

52.   On June 2, 2022, Matt Cervasio ("Cervasio") financed the purchase of a 2020 Mazda Cx-5 Vin: JM3KFBCM6L0764223 from Blaise Alexander Mazda of Hazleton, Pennsylvania for a purchase price of $28,529.41.At the time of purchase the vehicle had 45,773 miles.

53.   In January 2024, Cervasio noticed a large oil leak, with the oil pressure and check engine light on. He did not drive the vehicle but purchased 5 quarts of oil and a filter from Walmart. He drained the remaining oil and checked the oil filter and oil plug, however it was evident that the leak was not coming from either of those. The appearance of the oil was milky, showing that there was some coolant mixing with the oil. Consequently, he had the vehicle towed to the dealership where he purchased it. The dealer diagnosed the problem as a cracked cylinder head. A Portfolio One warranty claim was opened on February 13, 2024 as the dealership is required to open the claim. Luckily the extended warranty that he bought at the time of purchase covered all the repairs.

54.   Prior to his purchase, Cervasio considered the safety, fuel economy and reliability of the Class Vehicles, the features

important to him, which was the subject of Mazda's marketing of the Class Vehicle.

55.   Cervasio did not learn of this issue until he experienced the defect firsthand. He subsequently looked online and learned that it was a common problem.

56.   Had Mazda disclosed that this vehicle contained the Defect, Cervasio would not have purchased the vehicle, or would have paid significantly less for the vehicle.

57.   On February 17, 2022, Nicole Long ("Long") purchased of a 2016 Mazda CX-9 Vin: JM3TCBDY3G0101860 from Carvana, LLC, in Atlanta, Georgia for a purchase price of $32,677.18. At the time of purchase the vehicle had 47,569 miles.

58.   In mid-February 2024, Long realized the heat in the vehicle would turn cold when the car was idle and it was missing approximately four cups of coolant.

59.   She immediately brought the vehicle to her mechanic to look for a leak, but they could not find one.

60.   In late March, she noticed that the engine temperature went from 200 to 220 while her car was idle. She put in an entire container of coolant, but immediately took it to another mechanic to look for the leak. They also could not find one, and determined it was not the thermostat.

61.   The next day, March 30, 2024, she took it to the Hennessy, Mazda dealership.

62.   They searched for a leak for a week and could not find one, determining that it must be leaking behind the cylinder head and into the engine. It was determined that the coolant was rapidly going down, with no sign of external leaks. Because Long kept an eye on it, she was able to catch is quickly so there was less damage than there could have been.

63.   When she told Mazda that she had been doing research and was aware of this issue and the TSB Mazda posted for this car, they denied knowing if that was the problem. However, Mazda realized that coolant had gotten into the engine when it was cranked up and white smoke with the smell of coolant came out of the exhaust.

64.   Long had to have a new engine stalled and paid $9,981.65 for the repairs. She was able to retrieve the vehicle on April 17, 2024,after  a period of more than two weeks.

65.   Prior to her purchase, Long considered the safety, fuel economy and reliability of the Class Vehicles, the features important to her, which was the subject of Mazda's marketing of the Class Vehicle.

66.   Had Mazda disclosed that this vehicle contained the Defect, Long would not have purchased the vehicle, or would have paid significantly less for the vehicle.

67.  On  November  2,  2019,  Shannon  Ann  Foley  ("Foley") purchased  a  2019  Mazda  CX-9,  4-door  SUV  AWD  GR  Tour  VIN:

JM3TCBDY9K0332707 from Pearson Mazda in Richmond Virginia at the total delivery price of $42,750.00 prior to a $2,750 rebate. At the time of delivery the vehicle had 48 miles.

68. Prior to her purchase, Foley considered the safety, fuel economy and reliability of the Class Vehicles, the features important to her, which was the subject of Mazda's marketing of the Class Vehicle. Foley also reviewed the Monroney sticker that Mazda placed on the window prior to her purchase, which advertised the Class Vehicles features, price, specifications, equipment, warranty, crash test ratings and gas mileage. Foley relied on the representations contained on the window sticker when deciding to purchase the Class Vehicle. The Monroney sticker did not disclose that the Class Vehicle possessed the Coolant Leak Defect. None of the representations received contained any disclosure related to the Defect.

69. During a routine oil change in February 2024, when the vehicle had 105,500 miles, Foley was informed of a coolant leak. The service technician referred her to the dealer for follow up as his shop was unable to resolve the issue for her.

70. On February 21, she was advised by Pearson Mazda, of Richmond, VA via a service video, that there was a coolant leak and mentioned that it is a common issue with that model/year of car.

71.  She learned this information just after making the final payment on the vehicle that same week. Needless to say, she was quite distressed.

72.  Foley had a phone conversation with Kathy Ethridge from Pearson Mazda who suggested that there is a fix for the problem. However, Ethridge was unable to provide any written confirmation. Ethridge also indicated that the replacement engine would be the exact same model, at a cost exceeding $10,000. Pearson Mazda offered no good faith assistance of any kind and eventually discontinued email communication.

73.  After getting an estimate from the Mazda dealership for a replacement engine at a cost of $11,422.17 with only a 12 month warranty, she purchased a used engine with a three year warranty for $5,904.20 from Lacy Auto Parts, Inc. in Charles City Virginia and had the engine replacement and fluid replenishment done by Patriot Auto Works in Providence Forge, Virginia at a cost of $2,030 at a total cost of $7,934.20.

74.  Foley reached out to corporate at Mazda and opened a file with the Mazda Customer Experience Center. She sent copies of her invoices for the motor replacement and installation.

75.  She requested that Mazda reimburse some or all of this expense to no avail.

76.     After incurring the expense of having the engine replaced, Foley could not bear the thought of incurring further expenses for additional repairs so she sold the vehicle.

77.     On May 31, 2019, Jalen Carter ("Carter") purchased a 2018 Mazda 6 Grand Touring Reserve, VIN:  JM1GL1WY0J1315367 from Flow Mazda of Greensboro in North Carolina at a purchase price of $23,799.The vehicle had 21,656 miles at the time of purchase.

78.     Prior to his purchase, Carter considered the safety, fuel economy and reliability of the Class Vehicles, the features important to him, which was the subject of Mazda's marketing of the Class Vehicle. Carter also reviewed the Monroney sticker that Mazda provided to him prior to his purchase, which advertised the Class Vehicles features, price, specifications, equipment, warranty, crash test ratings and gas mileage. Carter relied on these representations when deciding to purchase the Class Vehicle. The Monroney sticker did not disclose that the Class Vehicle possessed the Coolant Leak Defect. None of the representations received contained any disclosure related to the Defect.

79.     On April 7, 2022, Carter had to bring his vehicle to be service for a non-starting issue and the mechanic found a coolant leak. He was advised to replace the coolant cap tank at a cost of $157.38.

80.    Less than a year later, on April 4, 2023 the engine was overheating and leaking coolant. He had to replace the radiator cap at an initial cost of $293.22.

81.    However less than a month later, on April 26, 2023, Carter had to bring the vehicle in for a follow up at a cost of $170.80.

82.    Then on May 16, 2023, because of persistent overheating, the vehicle had to be brought in again and was diagnosed with a leaking cylinder head at a cost of $2,406.90 which he had to pay out of pocket.

83.    Throughout several of these services, Carter was not provided with a loaner vehicle. Moreover, despite reaching out to Mazda corporate for support, the response was inadequate.

84.    In July of 2022, Dallin Hardy ("Hardy") purchased a 2020 Mazda 6 GTR 2.5 Turbo VIN JM1GL1WY5L1512456 from Herb Easley Motors in Wichita Falls Texas for a purchase price of approximately $32,000. He is listed as the first owner of the vehicle although it was used as a demonstrator by the dealership. Prior to his purchase, Hardy considered the safety, fuel economy and reliability of the Class Vehicles, the features important to him, which was the subject of Mazda's marketing of the Class Vehicle. Hardy also reviewed the Monroney sticker that was in the glove box when he purchased the vehicle, which advertised the Class Vehicles features, price, specifications, equipment, warranty, crash test

ratings and gas mileage. The Monroney sticker did not disclose that the Class Vehicle possessed the Coolant Leak Defect. None of the representations received contained any disclosure related to the Defect.

85. Hardy had all the maintenance done by the Mazda dealership. In late April, when the car had only 66,000 mile, he took it to the dealer with a coolant leak. After paying $200 for a diagnosis, they advised him that the whole top end of the motor needed to be rebuilt because the head was leaking. They were going to charge him $5,900 for the repair.

86. At that point, Hardy was uncomfortable driving a Mazda so he traded in the vehicle for another make and model. He received less for his trade in because of the coolant leak defect.

87. At all times, Plaintiffs and the other members of the Class drove their vehicles in a foreseeable manner, and in the manner in which they were intended to be used.

88. The proposed class representatives and proposed class members complied with all warranty and contractual obligations including all warranty, warranty notice, maintenance and product use obligations for their respective class vehicles. The proposed class representatives and proposed class members operated their class vehicles under normal anticipated driving conditions.

89. Despite actual and constructive knowledge of the class vehicle Defect as described in this complaint, the Defendants

failed to cure the Class Vehicle Defect within the express warranty period and thereby breached the terms of the express warranty.

90.   Additionally, the Defendants refused to fully reimburse or compensate the proposed class representatives and class members for vehicle repair expenses or provide a suitable substitute or replacement vehicle during repairs for those who have already experienced the Defect.

91.   Through no fault of their own, the proposed class representatives and proposed class members did not possess sufficient technical expertise to recognize symptoms of impending coolant leak defect and related cylinder head flaws.   This information, however, was well known to Mazda, but not revealed.

92.   Plaintiffs and the Class have suffered an ascertainable loss as a result of the Defendants' omissions associated with the Defect, including but not limited to, out-of-pocket losses and diminished value of the vehicles.

93.   Were Plaintiffs and the other members of the Class aware of the concealments, failures to disclose and omissions described herein, they would not have purchased their vehicles or would have paid significantly less for them.

### III. <u>JURISDICTION AND VENUE</u>

94.   This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §1332(d)(2), as the Class contains more than 100 members, at least

one of whom maintains citizenship in a state diverse from Defendants and seeks in the aggregate more than Five Million Dollars ($5,000,000.00), exclusive of costs and interest. This Court also has original federal question jurisdiction because Plaintiffs assert claims arising under the Magnuson-Moss Warranty Act, 15 U.S.C. Section 2301 et seq.

95.   This Court has personal jurisdiction over the parties because Defendants conduct substantial business in New Jersey and has injured Plaintiffs who are citizens of New Jersey. Defendants have purposefully availed themselves of the benefits and protections of the District of New Jersey by continuously and systematically conducting substantial business in this judicial district, and has agents and representatives that can be found in this State.

96.   Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Defendants conduct substantial business in this district, has sold defective vehicles to individuals who are citizens of New Jersey, and advertise in this district and it profits from its activities conducted within this district. Accordingly, this Court has jurisdiction over this action, and venue is proper in this judicial district.

## IV.  TOLLING OF STATUTE OF LIMITATIONS

97.   Any applicable statute(s) of limitations have been tolled by Mazda's knowing and active concealment and denial of the

facts alleged herein. Despite their due diligence, Plaintiffs and the other members of the Class could not have reasonably discovered the Defect until shortly before this class action litigation was commenced.

98.  Mazda was and remains under a continuing duty to disclose to Plaintiffs and the other members of the Class the true character, quality and nature of the Defect, that the Defect will require costly repairs, that the Defect poses a safety concern, and that the Defect diminishes the resale value of the Class Vehicles. As a result of the active concealment by Mazda, any and all statutes of limitations otherwise applicable to the allegations herein have been tolled.

99.  Moreover, because the Defect could not be detected due to Mazda's purposefully fraudulent concealment, Plaintiffs and the other members of the Class were not reasonably able to discover the Defect until long after purchasing or leasing the Class Vehicles, despite their exercise of due diligence. Thus, the discovery rule is applicable to the claims asserted by Plaintiffs and the other members of the Class.

100. Any applicable statute of limitation has therefore been tolled by Mazda's knowing, active concealment and denial of the facts alleged herein. Mazda is estopped from relying on any statutes of limitation because of its concealment of the Defect.

## V.  <u>FACTUAL BACKGROUND</u>

A. <u>The Class Vehicles & The Defect</u>

101. The Class Vehicles experiencing the Defect are all Mazda 2019-2020 CX-5 Skyactiv-G 2.5T vehicles produced before June 9, 2020, 2016-2020 CX-9 Skyactiv-G-2.5T vehicles produced before June 9, 2020, 2018-2020 Mazda 6 Skyactiv-G 2.5T vehicles produced before March 26, 2020 and 2019-2020 Mazda6 Skyactiv-G2.5T produced before March 21, 2020 with Mexico Specifications (hereinafter, the "Class Vehicles").

102. Prior to July 24, 2020, Mazda was aware that there was a serious problem impacting Cylinder Heads in the Class Vehicles, because that's when it first issued a Service Alert SA-058/20 describing a new cylinder head assembly for service parts for SKYACTIV-G2.5 with cylinder deactivation when replacement is needed. Updates were issued three times in 2020, specifically August 5th, August 20th and December 21st and again on May 6, 2021 and August 5, 2021. The superseding Service Alert was issued on October 12, 2021 and the primary purpose of the last Service Alert was to inform the dealerships that "Due to a Supply Issue for Cylinder Heads, Gasket Sets and Partial Engine, Please contact Hotline for Repair Guidance." See <u>Exhibit A.</u> Thus, it is apparent that the number of Class Vehicles needing these expensive repairs was outpacing the production of the necessary replacement parts.

103. On October 15, 2021 Mazda issued Technical Service Bulletin ("TSB") 01-013/21 entitled "Coolant Leaks at Cylinder Head" Two months later on December 2, 2021 an update was issued (Exhibit. B) The bulletin describes that some vehicles may have coolant leaks at the cylinder head around the exhaust manifold, and cracks at the stud bolt hold or at the outside of the exhaust manifold. The bulletin explains that cracks may be caused by "deformation of the exhaust manifold during usage causing unexpected force to certain areas of the cylinder head. Residual stress generated during production in the cylinder head material may be greater than expected. The external force from the exhaust system when driving over bumps may cause unexpected force to certain areas of the cylinder head." According to this TSB, the design of the exhaust manifold gasket and cylinder head has been modified to reduce the force on the cylinder head. The TSB provides detailed repair instructions and parts lists for the repair.

104. Notably, the Warranty information on these TSBs provide that "This warranty information applies only to verified customer complaints on vehicles eligible for warranty repair. This repair will be covered under Mazda's Powertrain Warranty. Additional diagnostic time cannot be claimed for this repair."

105. Consequently, if this Defect manifests after the expiration of the powertrain warranty, which is 5 years or 60,000

miles, the class member will be responsible for the full cost of this expensive repair.

106. Yet another TSB was issued to address the problem of Coolant Leaks at the Cylinder Head when Mazda released Bulletin No. 01-007/22 on June 27, 2022.This Bulletin superseded TSB 01-0132/21 issued on 10/15/21 and 12/02/21. With the exception of a change to the Operation Number to be used on repairs to the CX-9 it appears that the repair procedure is still the same as is the restriction to the time and mileage limit for coverage under the powertrain warranty(Exhibit C)

107. However, on February 10, 2023 Mazda released TSB No. 01-002/23 which was the most recent update of a previous TSB issued a month earlier and supersedes all the previous bulletins discussed above. (Exhibit D)

108. This TSB expands the description of the problem, providing that "There may be cracks at the stud bolt hole or at the outside of the exhaust manifold flange on the cylinder head." It also clarifies that Cracks may be caused by: "Expansion characteristics of the exhaust manifold during use causing unexpected force to certain areas of the cylinder head. This is in addition to the causes listed in the earlier TSBs. The new repair procedure also lists more than a dozen additional parts that must be ordered for the dealer to complete the repair. However, despite all these numerous attempts to provide a fix for the coolant leaks

at the cylinder head in the class vehicles, the TSB still advises that "This warranty information applies only to verified customer complaints on vehicles eligible for warranty repair. This repair will be covered under Mazda's Powertrain Warranty." Thus, class members with more than 5 years or 60,000 miles must pay out of pocket for the repairs.

109. All the TSB's provide that the Service Information is inapplicable if engine overheating is suspected or the engine oil is a milky light brown color, which would show that the coolant is mixing in the oil. Prior to following the steps to make the repair in the Service Information the repair technician is directed to check for overheating or mixing of the coolant into the engine. If either event is present, the technician has to seek approval for partial engine replacement from MASH. There is nothing in any of the TSB's indicating that there is warranty coverage for partial engine replacement, and as can be seen from the experience of several of the Class Representatives in this case, total engine replacement has not been covered for these Plaintiffs unless the vehicle was either within the normal warranty period or the Plaintiff purchased an extended warranty.

B. **The Reasonable And Legitimate Expectations Of Plaintiffs And The Members Of The Putative Class**

110. Customers purchasing or leasing vehicles reasonably and legitimately expect that those vehicles, like the Class Vehicles at issue herein, will properly function for many years.

111. In purchasing or leasing their vehicles, Plaintiffs and the other members of the Class reasonably and legitimately expected their vehicles to be reliable, and to operate in accordance with all of their intended purposes – including not having to replace the cylinder heads on their vehicles or potentially part or all of the vehicles' engines.

112. In purchasing or leasing their vehicles, Plaintiffs and the other members of the Class reasonably and legitimately expected that the Class Vehicles would be free from the Defect.

113. The existence of the Defect is a fact that would be considered material to a reasonable consumer deciding whether to purchase or lease an expensive Mazda vehicle. Particularly since Mazda touts its vehicles as lasting as long as 200,000 to 250,000 miles of use with proper maintenance.

114. Customers like Plaintiffs and the other members of the Class, reasonably and legitimately expect and assume that a vehicle will function in their intended manner, will not pose a safety hazard, and are free from defects. Plaintiffs and the other members of the Class also reasonably and legitimately expect and assume that Defendants will not sell or lease vehicles with a known defect, will disclose any such defects to consumers when they learn of them, and take all steps to remedy any defect in a manner that does not cause additional cost to the customer. It was reasonable and legitimate for Plaintiffs and the other members of the Class

to expect Mazda not to actively and intentionally conceal problems from them – such as the Defects described herein, to continually deny its existence, and refuse to bear the repair costs that become necessary to correct the problems resulting from the Defect.

115. Throughout the period that the Class Vehicles were sold and leased, Mazda marketed, promoted, and advertised the Vehicles as reliable and safe.

116. Plaintiffs and the other members of the Class reasonably and legitimately expected Mazda to disclose the existence of the Defects and that the Vehicles were prone to coolant leaks at the time of sale or lease, or when the vehicle was brought in for regular maintenance or repairs.

117. Plaintiffs and the other members of the Class could not have discovered the latent Defect through any reasonable inspection of their vehicles prior to purchase.

118. As a consequence of Mazda's exclusive knowledge and concealment about the Defect, Mazda owners will not discover the problem until after regular warranty coverage has passed and Mazda has been unwilling to extend the warranty or institute a recall to correct this problem before class members need to undertake expensive engine replacement.

119. As a direct and proximate result of the Defect, Plaintiffs and the other members of the Class have experienced the inconvenience and expense of coolant leaks, resulting in

overheating, numerous repairs or engine replacements. Plaintiffs and the Class did not receive what they paid for, and have incurred actual damages, including diminution in value.

120. Had Plaintiffs and other members of the Class known about the Defect while they were in the market for purchasing or leasing a vehicle, they would not have purchased or leased the Class Vehicles or, at the very least, would have paid less for them particularly due to the increased risk of accident, injury or death.

### C. Defendants' Awareness Of The Defect

121. Plaintiffs allege that at all relevant times, specifically at the time they purchased or leased their vehicles and when their vehicles were brought in for service, Defendants knew of the Defect and the safety dangers of the Defect. Mazda was under a duty to disclose the Defect based upon its exclusive knowledge of and/or concealed material information regarding the Defect; Mazda failed to disclose the Defect to Plaintiffs, other Class members, or the public at any time or place or in any manner such that it could (and would) have affected Plaintiffs' and other class members' pre-sale decision to purchase and/or lease the Class Vehicles.

122. The Defendants failed to inform Class Vehicle owners and lessees prior to purchase or during the express warranty period that numerous models and model year Mazda vehicles had

problems with the cylinder head assemblies and were prone to coolant leaks and cracking at the cylinder heads requiring expensive repairs. This defect frequently manifests shortly after expiration of the express warranty. Mazda misrepresented by affirmative conduct and/or omission and/or fraudulent concealment that the Defect existed.

123. The Defendants also failed to inform Class Vehicle owners and lessees at the time of purchase that Class Vehicle's had been inadequately tested prior to placing the car in production and the time of Class Vehicle sale.

124. Mazda obtained knowledge that there was something wrong with the cylinder heads being prone to cracking prior to Autumn 2020 as evidenced by that fact that they had to investigate the problem and discover numerous instances of the Defect, prior to issuing the first SA in July 2020.

125. Mazda knew there was a problem prior to that time, given the extensive complaints on numerous websites monitored by Mazda, including Mazda's own online forum, which included numerous complaints. Additionally, there are complaints posted on the database maintained by the National Highway Traffic Safety Administration which Mazda was clearly aware of. It is plain that Defendant knew of the Defect at the time when Plaintiffs and the class members purchased or leased their Class Vehicles.

126. Defendant also knew, or reasonably should have known, of the Defect based upon the number of complaints it received from its dealerships and service shops. For instance, multiple departments at Mazda interact with its dealerships and service shops in order to identify potentially widespread vehicle problems. These departments collect and analyze data from the dealerships and service shops in order to identify any problems in its vehicles.

127. Mazda requires its dealerships to sign a Dealer Agreement which requires the dealerships to provide Mazda with access to all the service and warranty service records for repairs made by the individual dealerships. The Agreement establishes that Mazda requires its dealerships to have a computer system that serves as Mazda's primary link to the dealership, including for parts, ordering, warranty claims, filing of reports, etc. Indeed, even the TSB's direct the repair technicians to obtain information from MGSS online, to contact MASH for approvals for certain services and to order parts on eMDCS, and to check the status of parts availability by contacting DAG group for assistance. (Exhibit B) There is also a hotline that dealers are directed to contact with respect to supply issues and for repair guidance. (Exhibit A)

128. Further, Mazda's customer relations division regularly receives and responds to customer calls, emails, and other

correspondence concerning, *inter alia*, product defects. Indeed, one Class Representative in this case opened a file with the Mazda Customer Experience Center to seek help for this problem. Through these sources, Mazda was made aware, or reasonably should have been made aware, of the Defect.

129. Numerous customer complaints from numerous sources demonstrate that Mazda knew, or reasonably should have known, of the problems concerning the Defect, the costs associated with the necessary repairs, and how the defective condition affects its consumers.

130. Further, Mazda has a legal obligation pursuant to federal law to monitor defects that can cause a safety issue and report them within five (5) days of learning of them. Consequently, Mazda closely monitors the NHTSA-ODI website and the complaints filed therein in order to comply with their reporting obligations under federal law. Complaints on the NHTSA website which may be related to this problem appear below:

131. A sampling of posts regarding concerns by Mazda owners posted on the Mazda website appear below:

ctbale said:

They should install the revised head and exhaust gasket set so your car should be solid after the repair. I am curious if you get 16 new valves or if they reuse the original ones

The TSB is showing that the new set of valves is included with the cylinder head. But also many other gaskets in the turbocharger and water pump and fuel line and drive shaft, etc. Even the wheel alignment is listed among the things to do. Mazda is reimbursing 11.3 labor hours for this fix.

I will take the TSB to the dealer and ask that they do every single thing listed there and will also contact MazdaUSA for them to connect with the dealer and make sure everything is replaced

since they will be paying the dealer for it.
Will follow up with more details.

**Contributor**

:

2022 CX9 Tourin

- [May 19, 2023](#)

- [#104](#)

is there any preventive measures that can be taken before the cylinder head cracks? has it been determined why some vehicles are affected or is it just a matter of time until all vehicles are affected?



[**Silly Wabbit**](#)

:

Mazda CX-9 Signature

- [Jun 9, 2023](#)

- [#105](#)

[SCJ79 said:](#)
is there any preventive measures that can be taken before the cylinder head cracks? has it been determined why some vehicles are affected or is it just a matter of time until all vehicles are affected?

I don't think there's anything you can do to prevent it. IMO it's a design flaw from the extra stress from the turbo.

Reactions: [sm1ke and Tchman2016](#)



[**sm1ke**](#)
2018 Mazda CX-9 Signature
**Moderator**
**Contributor**

:

Canada

- [Jun 9, 2023](#)

- 
  - [#106](#106)

SCJ79 said:

is there any preventive measures that can be taken before the cylinder head cracks? has it been determined why some vehicles are affected or is it just a matter of time until all vehicles are affected?

I think the TSB states something along the lines of the exhaust system moving around too much when going over bumps, which causes unexpected forces that can cause the cylinder head to crack.

I have considered maybe replacing or reinforcing the exhaust system, or replacing the exhaust hangers with new ones, to prevent this from happening on my car, but I have no idea if it would help or not.



Reactions: SCJ79

**Silly Wabbit**

Mazda CX-9 Signature

- [Jun 9, 2023](#)

- 
  - [#107](#107)

I want to say upstream of the cat is all bolted together with no flex. So if anything, a brace to relief the weight of the turbo off of the exhaust manifold might be something to look into.



Reactions: SCJ79 and sm1ke

**JPL**

2018 Mazda6, CX-9

- [Jun 11, 2023](#)

- 
  - [#108](#108)

They say it's aggravated by bumps so not off-roading and avoiding big pot holes may help you beat the odds.



**Kedis82ZE8**
'15 CX-5 AWD GT w/Tech Pkg

**Contributor**

- Jun 11, 2023

- 
  - #109

@JPL

I've driven some forest service roads in WA state that are smooth and unjarring compared to the interstate and state HWYs.

Reactions:SCJ79



**sm1ke**
2018 Mazda CX-9 Signature

**Moderator**
**Contributor**

:

Canada

- Jun 12, 2023

- 
  - #110

JPL said:
They say it's aggravated by bumps so not off-roading and avoiding big pot holes may help you beat the odds.

We have some pretty bad roads here. Manageable, but I have hit quite a few potholes over the last 5 years. Same with my wife, who managed to hit one hard enough to cause a minor bend in one of the rims, and I've still been able to dodge the coolant leak issue for now.

Reactions:SCJ79 and JPL



**yrwei52**

2016 Mazda CX-5 GT AWD w/Tech Pkg

**Contributor**

Plano, Texas, USA

- Jun 21, 2023

- 
  - #111

SCJ79 said:

is there any preventive measures that can be taken before the cylinder head cracks? has it been determined why some vehicles are affected or is it just a matter of time until all vehicles are affected?

The TSB says:

*Cracks may be caused by:*
*• Expansion characteristics of the exhaust manifold during usage causing unexpected force to certain areas of the cylinder head.*
*• Residual stress generated during produbction in the cylinder head material may be greater than expected. The external force from the exhaust system when driving over bumps may cause unexpected force to certain areas of the cylinder head.*

So if you drive gently and always on the smooth road, you have less chance to make the cylinder head cracked.

It's a design issue when Mazda modified the original SkyActiv cylinder head for the added turbo. It created certain weak areas which can't stand the unexpected force like the original head hence cracked.

Reactions:SCJ79

K

**kml30kml30**

- Jun 27, 2023

- 
  - #112

2019 Grand touring reserve with turbo engine - 24k miles. Never had any problems but engine temp overheated last weekend. Took into the mazda dealer and they are going to replace the cylinder head. Never noticed any coolant leaks or anything like that, but obviously seems related to the known issue with this model year and engine. Question for those who have experienced

this: once they replace this cylinder head am I in the clear? Coming up on the end of my drivetrain warranty - glad it happened now I guess, but is this a sure fire fix or will I be dealing with other problems from this design flaw down the road?



**[yrwei52](#)**
2016 Mazda CX-5 GT AWD w/Tech Pkg
**Contributor**

:

Plano, Texas, USA

- [Jun 28, 2023](#)

- 
  - [#113](#)

[kml30kml30 said:](#)

2019 Grand touring reserve with turbo engine - 24k miles. Never had any problems but engine temp overheated last weekend. Took into the mazda dealer and they are going to replace the cylinder head. Never noticed any coolant leaks or anything like that, but obviously seems related to the known issue with this model year and engine. Question for those who have experienced this: once they replace this cylinder head am I in the clear? Coming up on the end of my drivetrain warranty - glad it happened now I guess, but is this a sure fire fix or will I be dealing with other problems from this design flaw down the road?

Mazda claimed they have revised the cylinder head and exhaust manifold gasket for this problem on the 2.5T. But only the time can tell if the revisions have actually fixed the problem for long term. It took 5 years to expose this cracked cylinder head problem from original head.

Personally I wouldn't keep this 2.5T for too long as it'd cost an arm and a leg to fix if the same problem happens again without warranty.



**[11E20](#)**

:

CX9

- [Jun 28, 2023](#)

- 
  - [#114](#)

[kml30kml30 said:](#)

2019 Grand touring reserve with turbo engine - 24k miles. Never had any problems but engine temp overheated last weekend. Took into the mazda dealer and they are going to replace the cylinder head. Never noticed any coolant leaks or anything like that, but obviously seems related to the known issue with this model year and engine. Question for those who have experienced this: once they replace this cylinder head am I in the clear? Coming up on the end of my drivetrain warranty - glad it happened now I guess, but is this a sure fire fix or will I be dealing with other problems from this design flaw down the road?

Thanks for sharing your experience. I also have a 2019 GT with almost identical mileage as yours and thus far haven't had any problem. From reading other posts here it *appeared* higher mileage vehicles were more prone to this problem but after seeing yours I'm wondering if that's a valid supposition? I buy a new car every 6 years, usually in March so I'm sweating out the next 20 months or so before I trade this SUV in.



**Duke Yugo**

- [Jul 10, 2023](#)

  - [#115](#)

All working well a month after the repair. The vehicle drives great.
I had the dealer do a firmware update of the TCM and the transmission shift learning reset.
OMG! The car drives like new. And I had both lower control arms replaced a few months ago.
I am in love again!

Reactions: [Antoine and sm1ke](#)

**csb_1237**

- [Jul 22, 2023](#)

  - [#116](#)

There is a class action lawsuit investigation currently underway regarding this problem for the CX-5 and CX-9 models. I provided them my info for the head replacement repair that was made to our 2016 CX-9. [Mazda CX-5 and CX-9 Engine Coolant Leak Defect – Class Action Investigation | Sauder Schelkopf Attorneys at Law](#)

Reactions: [LeSheep, crimeariver and copofop](#)



### Mazda_petal

**Banned**

- Nov 16, 2023

- 
  - #117

yrwei52 said:

Yeah, by letting CX-9 owners waiting for 2 ~ 3 months, even getting the whole engine from Japan after repeated phone calls and complaints. That's the quick turnaround replacing the whole engine?

Read these threads:

**Poll 2.5T Coolant Leak/Engine Replacement. What can be done to prevent?**

**2016 CX-9 Signature leaking coolant**

On those 2.5L with cylinder deactivation, Mazda started with replacing the entire engine when the CD is having problrms such as fallen rocker arm or failing HLAs. Later Mazda created a new part number on cylinder head with everything pre-installed for easy replacement on cylinder head, and Mazda no longer replaces the entire engine for the same CD issues. No, replacing cylinder head has to be more cost effective everything considered if the cylinder block itself has no issues.

So it isn't just the cylinder head cracked like the TSB says. Cylinder block may also be the subject easy to crack too. That's my suspicion.
Click to expand...

How do you get Mazda corporate to fix the problem on the car ? Mine blew at 126K miles and I still owe $$ on the car. Any advice is appreciated



### ctbale
Member

**Contributor**

:

2022 CX9 Tourin

- Nov 16, 2023

- 
  - #118

Mazda_petal said:

How do you get Mazda corporate to fix the problem on the car ? Mine blew at 126K miles and I still owe $$ on the car. Any advice is appreciated

Hate to even say this but once they see 126k, conversation is over.



**[Mazda_petal](#)**

**Banned**

- [Nov 16, 2023](#)

-
  - [#119](#)

[ctbale said:](#)

Hate to even say this but once they see 126k, conversation is over.

Conversation about good willing it or selling it? Honestly is appropriate for the situation I just don't think it's fair because I didn't buy a car for it to fail 126k and I don't think it's right they just had to replace the transmission at 99k under a TSB and why not at-least make me aware of the issue



**[JPL](#)**

2018 Mazda6, CX-9

- [Nov 16, 2023](#)

-
  - [#120](#)

[Mazda_petal said:](#)

Conversation about good willing it or selling it? Honestly is appropriate for the situation I just don't think it's fair because I didn't buy a car for it to fail 126k and I don't think it's right they just had to replace the transmission at 99k under a TSB and why not at-least make me aware of the issue

How many miles when you bought it?

A seller isn't going to tell you about a possible problem that may or may not happen. When they sold it to you it hadn't failed yet. While this is indeed a problem with the 2.5T, it isn't guaranteed to fail.

Unfortunately there's never going to be a goodwill repair on a vehicle over 100K. They have no obligation to help even though there's a design flaw. Technically, design flaws or manufacturing defects are only covered within the manufacturers warranty (the reason warranties even exist). 60,001 miles and you're out of luck.

Reactions:[ctbale and sm1ke](#)

https://mazdas247.com/forum/t/2-5t-engine-coolant-leaking-tsb.123876573/page-6

132. Below is a sampling of the complaints for some of the models owned by Plaintiffs who have complained to NHTSA.

April 14, 2018 NHTSA ID NUMBER: 11085069
Components: ENGINE
NHTSA ID Number: 11085069

Incident Date April 10, 2018

Consumer Location Unknown

Vehicle Identification Number JM3KFACM4J1****

Summary of Complaint

CRASH No

FIRE No

INJURIES 0

DEATHS 0

ENGINE MAKES LOUD NOISES AFTER DRIVING AND ACTS LIKE IT'S EXHAUSTED. THIS ALWAYS HAPPENS WHEN PARK THE CAR AND GET OUT OF IT. THERE IS A SLIGHT BURNING SMELL (WHICH I WAS TOLD WOULD WEAR OFF AFTER THE FIRST COUPLE HUNDRED MILES), BUT IT'S STILL DOING THIS. IT'S LIKE THE ENGINE OVER HEATED (WHICH NO INDICATOR) AND IT NEEDS TO COOL OFF. THE SMELL IS THE MOST CONCERNING PART.

NHTSA ID Number: 11506306

Incident Date January 30, 2023

Consumer Location ROANOKE, TX

Vehicle Identification Number JM3KFABMXL0****

Summary of Complaint

CRASH No

FIRE No

INJURIES 0

**DEATHS 0**

Faulty engine coolant thermostat causing cooler than normal range engine. Engine light code P0126

**NHTSA ID Number:** 11538387

**Incident Date** July 1, 2023

**Consumer Location** ARLINGTON HEIGHTS, IL

**Vehicle Identification Number** JM3TCBCY0L0****

**Summary of Complaint**

**CRASH No**

**FIRE No**

**INJURIES 0**

**DEATHS 0**

Some vehicles may have coolant leaks at the cylinder head around the exhaust manifold. There may be cracks at the stud bolt hole or at the outside of the exhaust manifold - from Mazda's TSB. Excessive coolant leak leading to engine-overheating and going into 'limp mode' couldn't drive faster than around 30 mph. Mazda has repeatedly declined help with goodwill requests and any further assistance. ref. https: [XXX] INFORMATION REDACTED PURSUANT TO THE FREEDOM OF INFORMATION ACT (FOIA), 5 U.S.C. 552(B)(6)

April 15, 2024 NHTSA ID NUMBER: 11583106
**Components: ENGINE**
**NHTSA ID Number:** 11583106

**Incident Date** April 2, 2024

**Consumer Location** LOUISVILLE, KY

**Vehicle Identification Number** JM3TCBDYXJ0****

**Summary of Complaint**

**CRASH No**

**FIRE No**

**INJURIES 0**

**DEATHS 0**

Car started leaking coolant, and running rough / stalling. Eventually overheated due to lack of coolant. Mazda dealer reports Cylinder Head crack as the root cause of the issue. Car has 106K miles - and seems to have the same problem as referenced in NHTSA 10232269 [XXX] ) Mazda has decided to decline to offer any financial assistance in the repair. Replacement cost for just

the cylinder head (not a complete engine) was quoted by a Mazda dealership to be $6800 - $7200. INFORMATION REDACTED PURSUANT TO THE FREEDOM OF INFORMATION ACT (FOIA), 5 U.S.C. 552(B)(6)

**NHTSA ID Number:** 11576133

**Incident Date** August 30, 2023

**Consumer Location** BELVIDERE, IL

**Vehicle Identification Number** JM3TCBEY8J0****

**Summary of Complaint**

**CRASH No**

**FIRE No**

**INJURIES 0**

**DEATHS 0**

Engine coolant leaks at cylinder heads I started noticing the problem at around 50000 miles its a small coolant leak but car is almost 6 years old and now 54000 miles

**1 Affected Product**
**NHTSA ID Number:** 11568859

**Incident Date** January 20, 2024

**Consumer Location** AUSTIN, TX

**Vehicle Identification Number** JM3TCBDY0J0****

**Summary of Complaint**

**CRASH No**

**FIRE No**

**INJURIES 0**

**DEATHS 0**

I recently bought a Mazda CX-9 and noticed that my vehicle was slightly overheating. The coolant level was very low. I took it back to the dealership I bought it from and they confirmed that there was a crack in the cylinder head and are working on the repair. After further research, I am seeing this is common with these models. Mazda is aware but not taking responsibility.

**NHTSA ID Number:** 11566536

**Incident Date** January 19, 2024

**Consumer Location** Unknown

**Vehicle Identification Number** JM3TCBCY2J0\*\*\*\*

**Summary of Complaint**

**CRASH No**

**FIRE No**

**INJURIES 0**

**DEATHS 0**

Cracked Cylinder Head Verified by Mazda Dealer . Noted it seems to be a very common problem with Mazda cx9 2018 models and has Multiple TSB on issue so I kept very close eye on car and took it in as soon as I smelled burning smell suggesting a leak , before the car had the chance to overheat and put myself and kids in danger. My car is under 40k miles for a 2018 with consistent maintenance - this is known problem since 2021 and needs to result in a recall.

**NHTSA ID Number:** 11566091

**Incident Date** January 12, 2024

**Consumer Location** ALEXANDRIA, VA

**Vehicle Identification Number** JM3TCBBY5J0\*\*\*\*

**Summary of Complaint**

**CRASH No**

**FIRE No**

**INJURIES 0**

**DEATHS 0**

Mazda has a known technical service bulletin [XXX] which has numerous engine cylinder heads which leaks coolant causing the engine to overheat without warning. On new cars. Mazda knows it's an issue and has not pushed this information down to its consumers. [XXX] INFORMATION REDACTED PURSUANT TO THE FREEDOM OF INFORMATION ACT (FOIA), 5 U.S.C. 552(B)(6)

**NHTSA ID Number:** 11564928

**Incident Date** August 23, 2023

**Consumer Location** GRAND FORKS, ND

**Vehicle Identification Number** JM3TCBDY4J0\*\*\*\*

**Summary of Complaint**

**CRASH No**

**FIRE** No

**INJURIES** 0

**DEATHS** 0

Cracked cylinder head which lead to coolant leak.

**1 Affected Product**
**NHTSA ID Number:** 11561290

**Incident Date** December 21, 2023

**Consumer Location** GENEVA, IL

**Vehicle Identification Number** JM3TCBCY7J0****

**Summary of Complaint**

**CRASH** No

**FIRE** No

**INJURIES** 0

**DEATHS** 0

Engine coolant leaking due to cracked cylinder head, found by Mazda dealership service inspection and diagnostics. Powertrain warranty only covers this until 80,000 miles, our vehicle is 116,000.

**HTSA ID Number:** 11560367

**Incident Date** December 15, 2023

**Consumer Location** CHILTON, WI

**Vehicle Identification Number** JM3TCBCY6J0****

**Summary of Complaint**

**CRASH** No

**FIRE** No

**INJURIES** 0

**DEATHS** 0

At 102,000 miles I have a cracked cylinder head

**NHTSA ID Number:** 11558860

**Incident Date** December 5, 2023

**Consumer Location** HELMETTA, NJ

**Vehicle Identification Number** JM3TCBDY3J0****

**Summary of Complaint**

**CRASH No**

**FIRE No**

**INJURIES 0**

**DEATHS 0**

Cracked cylinder head resulting in no heat, leaking coolant and risk of overheating and fire. Crack on backside of cylinder head near exhaust manifold bolts. Weight of exhaust manifold is too much for the cylinder head and results in a Crack around the bolt. Cylinder head was casted too thin at the factory resulting in the head no being able to support the weight of the turbo and exhaust manifold. Mazda is not covering the defect under goodwill when customer is outside of warranty even though it effects every 2.5 turbo engine made between 2015 and 2020.

**1 Affected Product**

**NHTSA ID Number:** 11558288

**Incident Date** January 19, 2023

**Consumer Location** HOLLYWOOD, FL

**Vehicle Identification Number** JM3TCABY9J0****

**Summary of Complaint**

**CRASH No**

**FIRE No**

**INJURIES 0**

**DEATHS 0**

The contact owns a 2018 Mazda CX-9. The contact stated that while the vehicle was parked, he observed condensation under the vehicle. The vehicle was towed to an independent mechanic where it was diagnosed that the engine needed to be replaced. The vehicle was repaired but the failure persisted. The contact stated that while the vehicle was parked, he observed condensation under the engine compartment and on the top of the engine. The vehicle was taken to an independent mechanic where it was diagnosed that there was a crack in the cylinder head and that the engine needed to be replaced. The vehicle was not repaired. The manufacturer was notified of the failure. The failure mileage was 68,000.

**NHTSA ID Number:** 11554416

**Incident Date** November 6, 2023

**Consumer Location** CLAYMONT, DE

**Vehicle Identification Number** JM3TCBCY6J0\*\*\*\*

**Summary of Complaint**

**CRASH No**

**FIRE No**

**INJURIES 0**

**DEATHS 0**

My 2018 Mazda CX-9 developed a rapid overheating issue which was determined to be caused by a cracked cylinder head. This was a known issue by Mazda as noted in a technical service bulletin (Mazda TSB 01-013/21). I've been told by Mazda corporate and the Mazda dealership where the car is currently parked that this bulletin means nothing and will they will not cover the cost of repair. My extended warranty is also telling me that they will not cover the cost of repair because they don't cover damage caused by overheating. Even though The leak caused the overheating in the first place.

**HTSA ID Number:** 11552567

**Incident Date** October 1, 2023

**Consumer Location** Unknown

**Vehicle Identification Number** JM3TCBEY8J0\*\*\*\*

**Summary of Complaint**

**CRASH No**

**FIRE No**

**INJURIES 0**

**DEATHS 0**

Coolant leak in the 3rd cylinder, causing the car to overheat and cracking cylinder head, **NHTSA ID Number:** 11551210

**Incident Date** October 16, 2023

**Consumer Location** BEND, OR

**Vehicle Identification Number** JM3TCBEY1J0\*\*\*\*

**Summary of Complaint**

**CRASH No**

**FIRE No**

**INJURIES** 0

**DEATHS** 0

We noticed a coolant leak and took vehicle in for service. Told that engine has a Coolant Leak at Cylinder Head [XXX] . 5 year old vehicle, 56k miles. No other warnings. All maintenance has been previously performed as required. INFORMATION REDACTED PURSUANT TO THE FREEDOM OF INFORMATION ACT (FOIA), 5 U.S.C. 552(B)(6)

making inoperable.

**Incident Date** October 9, 2023

**Consumer Location** Unknown

**Vehicle Identification Number** JM3TCACY4J0****

**Summary of Complaint**

**CRASH No**

**FIRE No**

**INJURIES** 0

**DEATHS** 0

As I was driving 26 mile trip to work I noticed a red light illuminated on dash indicating the temp was about 240-260. I pulled into the parking lot immediately turned car off. After work (8 hour shift) drove home temp stayed at 200-210. The next morning I took it to the mechanic I've used for years. He did a visual detailed inspection finding that the water or antifreeze in the radiator was low. The antifreeze in the over flow tank was about an inch or so above the "L" line. He said there may have been an air pocket in it, a leak, water pump or thermostat going out. Watch the fluid levels daily, if the lower again take it to the dealership where I purchased it (4 months ago with 106K miles on it). I do have a 3 year or 30,000 mile warranty through the dealership. 4 days later I was very observant watching the temperature gauge. It went up to 240 briefly, so I got home and had my ex-husband check it. Both the radiator and the overflow tank were bone dry. Topped off radiator with antifreeze and the overflow tank to the "F" line. Car had cooled and right before topping fluid started. There is no noticeable sign of a leak (smell, white smoke from exhaust, visible puddles of anything on the motor or the ground where I've parked. Today is Thursday 10/12 and I can't get an appointment with dealership until Tuesday. I've been reading a lot online about this being a very repetitive issue. In some cases new engine replacement required. Mazda is well aware of not a few but NUMEROUS issues and complaints, a recall is needed for this situation. Right is right and fair is fair!!

**NHTSA ID Number:** 11582438

**Incident Date** April 8, 2024

**Consumer Location** FREEHOLD, NJ

**Vehicle Identification Number** JM3TCBDY8G0****

**Summary of Complaint**

**CRASH No**

**FIRE No**

**INJURIES 0**

**DEATHS 0**

We noticed anti-freeze leaking from our car a couple of days ago and immediately brought the car to our local mechanic. The mechanic determined that one of the cylinder heads in the engine was cracked and was leaking anti-freeze. He said the car was unsafe to drive. He also told us that a TSB had been issued by Mazda for this problem ( Bulletin No 01-002/23, issued 02/10/23). This bulletin states "Residual stress generated during production in the cylinder head material may be greater than expected. The external force from the exhaust system when driving over bumps may cause unexpected force to certain areas of the cylinder head". Had we not noticed the leak, the engine could have overheated, causing the engine to seize at any time, any place. which could have led to a dangerous accident. An accident that could have occurred on a major highway and could have involved other vehicles as well. Our car has just under 80,000 miles, has been well maintained and garage kept. I do not understand why a manufacturing defect such as this - which could lead to engine failure is not a mandatory recall by the manufacturer. We should have been warned that this could happen and mazda should be responsible for the cost of the repair. It is an engineering design flaw of the vehicle!

**NHTSA ID Number:** 11578122

**Incident Date** March 15, 2024

**Consumer Location** BRONX, NY

**Vehicle Identification Number** JM3TCBEY9G0****

**Summary of Complaint**

**CRASH No**

**FIRE No**

**INJURIES 0**

**DEATHS 0**

I started smelling coolant after exiting the vehicle from a drive. Coolant level was very low. Adding coolant did not last long. I could not see where the leak was. The dealership evaluated and determined I had a cracked cylinder head and the car is leaking coolant near the rear of the engine. This could cause the engine to seize should coolant get into the engine. The dealer (New Rochelle Mazda) explains the cylinder head needs replacing. The dealer also observed bad rear sway bar links. One was detached. The car is serviced at the same dealership every 5k miles. The

car has approximately 85k miles. The cylinder head has been repaired by the dealer under the extended warranty. Safety risk was moderate as the car could have stalled on the highway. The component was inspected by the warranty company and dealer only. The only warning lamps that showed up once were both brake indicator lights came on and the climate control would not warm the car.

**NHTSA ID Number:** 11570347

**Incident Date** May 15, 2023

**Consumer Location** PARSIPPANY, NJ

**Vehicle Identification Number** JM3TCBDYXG0****

**Summary of Complaint**

**CRASH No**

**FIRE No**

**INJURIES 0**

**DEATHS 0**

Cylinder head had a crack in it and had to be replaced.

**NHTSA ID Number:** 11565213

**Incident Date** December 7, 2023

**Consumer Location** HOPATCONG, NJ

**Vehicle Identification Number** JM3TCBCY8G0****

**Summary of Complaint**

**CRASH No**

**FIRE No**

**INJURIES 0**

**DEATHS 0**

The car started to overheat so we added coolant and then the car started to stall had our mechanic look at it and he said the head gasket needs to be replaced. How is this not a recall

**NHTSA ID Number:** 11564442

**Incident Date** September 8, 2023

**Consumer Location** GILBERT, AZ

**Vehicle Identification Number** JM3TCBEYXG0****

**Summary of Complaint**

**CRASH** No

**FIRE** No

**INJURIES** 0

**DEATHS** 0

The intercooler failed or failed cylinder head causing coolant leaking into the exhaust side and cause the engine to over heat.

**NHTSA ID Number:** 11560271

**Incident Date** October 7, 2023

**Consumer Location** LAVEEN, AZ

**Vehicle Identification Number** JM3TCACY4G0****

**Summary of Complaint**

**CRASH** No

**FIRE** No

**INJURIES** 0

**DEATHS** 0

Engine is leaking coolant. Took the car to Horne Mazda of Avondale dealership for inspection, was told coolant is leaking from cylinder head. Was told the engine overheated and both cylinder head and cylinder block warped and will need to replace the engine. I feel my safety and others were at risk because the car could have lost power and stalled in the middle of roadway at any time due to there was no symptoms of my car engine overheated, car was running as normal, no check engine light, coolant temperature gauge did not show it was overheating, no sign of engine loosing power, no smoke from under the hood, no sweet smell or any indication engine is loosing coolant and overheating while driving. It appears to be a slow leak because coolant reservoir still have coolant above minimum level. First sign of coolant leak was notice during first week of October 2023 when small amount of green fluid was found on garage floor, took car to dealer on Oct.12.2023 for inspection. MazdaUSA refused to cover engine replacement under paid Mazda Extended Confidence warranty (MEC), blaming it's owners fault for operating car while engine overheated and refused to provide written copy of inspection details.

**NHTSA ID Number:** 11558846

**Incident Date** November 7, 2023

**Consumer Location** HONOLULU, HI

**Vehicle Identification Number** JM3TCBEYXG0****

**Summary of Complaint**

CRASH **No**

FIRE **No**

INJURIES **0**

DEATHS **0**

While driving, engine suddenly overheated due to coolant leak from cracked cylinder head. This was a known issue per the TSB 01-002/23. See attached. Vehicle only has 55k miles and has been maintained, only requiring oil change, topping off of fluids, and filter changes. Dealership has determined that it will require a completely new long block. Mazda USA is currently only willing to cover a small fraction of parts costs, requiring me to pay the remaining parts and all labor costs.

133. Mazda had exclusive knowledge of and/or concealed material information about the Defect and failed to disclose the Defect to Plaintiffs and other class members in any pre-sale materials and during any service visits—the time at which Plaintiffs and other class members could have acted. Mazda had exclusive knowledge of and/or actively concealed the truth about the existence and nature of the Defect from Plaintiffs and other class members at all times, even though Mazda knew about the Defect and knew that information about the Defect would be important to a reasonable consumer.

134. Had Mazda disclosed the truth, Plaintiffs (and reasonable consumers) 1) would have paid less for the Class Vehicles, 2) would not have purchased or leased the Class Vehicles at all, or 3) would have brought their Class Vehicles in for service during the warranty period.

135. Mazda, like all automakers, is under a duty to disclose a known defect in a vehicle when there are safety concerns associated with the vehicle's use — *i.e.*, where the failure to disclose implicates a safety issue. Manufacturers may be held liable for their failure to disclose a defect when such an omission pertains to a safety issue. In this case, as stated above, Mazda knew about the Defect, and that the Defect could pose a physical threat to Plaintiffs' own safety or the safety of others. Nevertheless, Mazda failed to disclose the Defect to all owners or lessees of the Class Vehicles.

136. Based on the above, Mazda knew of the Defect at the time it sold or leased the Class Vehicles, and the potential danger it posed to consumers.

137. Based upon all the foregoing, Mazda was aware of the Defect when it began warranting, advertising, promoting, marketing, distributing, selling and leasing the Class Vehicles, and repairing the Class Vehicles, yet failed to take any remedial action.

138. Despite all of the foregoing, Mazda has refused to address and rectify the Defect, and has failed and refused to reimburse its customers for the monies they were forced to expend, and are continually forced to expend, as a direct and proximate result of the Defect. Mazda has failed to implement a plan to address the Defect, and has instead manufactured, warranted,

advertised, promoted, marketed, distributed, sold and leased subsequent models that contain the same or substantially similar Defect, which they actively and intentionally concealed.

139. Buyers, lessees and other owners of the Class Vehicles were without access to the information concealed by Mazda as described herein, and therefore reasonably relied on Mazda's representations and warranties regarding the quality, durability, and other material characteristics of the Class Vehicles. Had these buyers and lessees not been purposely deceived by Mazda regarding their vehicles and the known defects within them, Plaintiffs and the other members of the Class would have paid less for their vehicles than the amounts they actually paid or would not have purchased or leased the vehicles at all.

D. **Mazda's Warranty**

140. Mazda issued several different warranties to each owner or lessee of the Class Vehicles, one of which are relevant to this Defect.

141. The Basic Coverage Warranty, or bumper-to-bumper warranty is for 3 years or 36,000 miles whichever comes first.

142. The Powertrain Warranty is supposed to cover the parts of the vehicle that make the car move, including the engine, transmission, drive axels and related parts and is for 5 years or 60,000 miles whichever comes first. Mazda TSB's indicate that the Powertrain Warranty covers the Defect.

143. Mazda instructs owners and lessees to bring their vehicles to a Mazda dealership for warranty repairs.

144. In many if not most instances the Defect does not manifest until after the expiration of the power train warranty and Mazda refuses to provide warranty coverage after that warranty expires and will not cover the cost of a new engine despite that being the only remedy in many situations.

145. Owners and lessees of the Class Vehicles have incurred, and will continue to incur, expenses for the diagnosis and repair of the Defect, despite such Defect having been contained in the Vehicles when manufactured, distributed, advertised, marketed, and warranted by Mazda.

## VI. <u>CLASS ACTION ALLEGATIONS</u>

146. Plaintiffs bring this action on behalf of themselves and all other persons similarly situated, pursuant to Rules 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of the following class and subclasses (collectively, the "Classes"):

<u>The Nationwide Class</u>

All persons or entities in the United States who own, lease, or have owned or have leased, who own, lease or have owned or have leased a 2019-2020 Mazda CX-5 Skyactiv-G 2.5T vehicles produced before June 9, 2020, 2016-2020 Mazda CX-9 Skyactiv-G-2.5T vehicles produced before June 9, 2020, 2018-2020 Mazda 6 Skyactiv-G 2.5T vehicles produced before March 26, 2020 and 2019-2020 Mazda6

Skyactiv-G2.5T produced before March 21, 2020 with Mexico
Specifications, as well as any other Mazda/ model containing the
Defect.

### The New Jersey Subclass

All persons or entities in New Jersey who own, lease, or have
owned or have leased, a 2019-2020 Mazda CX-5 Skyactiv-G 2.5T
vehicles produced before June 9, 2020, 2016-2020 Mazda CX-9
Skyactiv-G-2.5T vehicles produced before June 9, 2020, 2018-2020
Mazda 6 Skyactiv-G 2.5T vehicles produced before March 26, 2020
and 2019-2020 Mazda6 Skyactiv-G2.5T produced before March 21, 2020
with Mexico Specifications, as well as any other Mazda/ model

### The Indiana Subclass

All persons or entities in Indiana who own, lease, or have
owned or have leased, a 2019-2020 Mazda CX-5 Skyactiv-G 2.5T
vehicles produced before June 9, 2020, 2016-2020 Mazda CX-9
Skyactiv-G-2.5T vehicles produced before June 9, 2020, 2018-2020
Mazda 6 Skyactiv-G 2.5T vehicles produced before March 26, 2020
and 2019-2020 Mazda6 Skyactiv-G2.5T produced before March 21, 2020
with Mexico Specifications, as well as any other Mazda/ model

### The New Hampshire Subclass

All persons or entities in New Hampshire who own, lease, or
have owned or have leased, a 2019-2020 Mazda CX-5 Skyactiv-G 2.5T
vehicles produced before June 9, 2020, 2016-2020 Mazda CX-9
Skyactiv-G-2.5T vehicles produced before June 9, 2020, 2018-2020

Mazda 6 Skyactiv-G 2.5T vehicles produced before March 26, 2020 and 2019-2020 Mazda6 Skyactiv-G2.5T produced before March 21, 2020 with Mexico Specifications, as well as any other Mazda/ model

### The Pennsylvania Subclass

All persons or entities in Pennsylvania who own, lease, or have owned or have leased, a 2019-2020 Mazda CX-5 Skyactiv-G 2.5T vehicles produced before June 9, 2020, 2016-2020 Mazda CX-9 Skyactiv-G-2.5T vehicles produced before June 9, 2020, 2018-2020 Mazda 6 Skyactiv-G 2.5T vehicles produced before March 26, 2020 and 2019-2020 Mazda6 Skyactiv-G2.5T produced before March 21, 2020 with Mexico Specifications, as well as any other Mazda/ model containing the Defect.

### The Georgia Subclass

All persons or entities in Georgia who own, lease, or have owned or have leased, a 2019-2020 Mazda CX-5 Skyactiv-G 2.5T vehicles produced before June 9, 2020, 2016-2020 Mazda CX-9 Skyactiv-G-2.5T vehicles produced before June 9, 2020, 2018-2020 Mazda 6 Skyactiv-G 2.5T vehicles produced before March 26, 2020 and 2019-2020 Mazda6 Skyactiv-G2.5T produced before March 21, 2020 with Mexico Specifications, as well as any other Mazda/ model containing the Defect.

### The Virginia Subclass

All persons or entities in Virginia who own, lease, or have owned or have leased, a 2019-2020 Mazda CX-5 Skyactiv-G 2.5T

vehicles produced before June 9, 2020, 2016-2020 Mazda CX-9 Skyactiv-G-2.5T vehicles produced before June 9, 2020, 2018-2020 Mazda 6 Skyactiv-G 2.5T vehicles produced before March 26, 2020 and 2019-2020 Mazda6 Skyactiv-G2.5T produced before March 21, 2020 with Mexico Specifications, as well as any other Mazda/ model containing the Defect.

### The North Carolina Subclass

All persons or entities in North Carolina who own, lease, or have owned or have leased, a 2019-2020 Mazda CX-5 Skyactiv-G 2.5T vehicles produced before June 9, 2020, 2016-2020 Mazda CX-9 Skyactiv-G-2.5T vehicles produced before June 9, 2020, 2018-2020 Mazda 6 Skyactiv-G 2.5T vehicles produced before March 26, 2020 and 2019-2020 Mazda6 Skyactiv-G2.5T produced before March 21, 2020 with Mexico Specifications, as well as any other Mazda/ model containing the Defect.

### The Texas Subclass

All persons or entities in Texas who own, lease, or have owned or have leased, a 2019-2020 Mazda CX-5 Skyactiv-G 2.5T vehicles produced before June 9, 2020, 2016-2020 Mazda CX-9 Skyactiv-G-2.5T vehicles produced before June 9, 2020, 2018-2020 Mazda 6 Skyactiv-G 2.5T vehicles produced before March 26, 2020 and 2019-2020 Mazda6 Skyactiv-G2.5T produced before March 21, 2020 with Mexico Specifications, as well as any other Mazda/ model containing the Defect.

**Excluded from all Classes**

Excluded from the Classes are: (a) Defendants, any entity in which Defendants have a controlling interest, and its legal representatives, officers, directors, employees, assigns, and successors that purchased the Class Vehicles; (b) the judge to whom this case is assigned and any member of the judge's immediate family; and (c) individuals with claims for personal injury, wrongful death and/or emotional distress.

147. **Numerosity/Impracticability of Joinder**: The members of the Class are so numerous that joinder of all members would be impracticable. The Class is believed to include tens of thousands of members. The Class is composed of an easily ascertainable, self-identifying set of individuals and entities that own, lease or owned and leased the Class Vehicles. The precise number of Class members can be ascertained by reviewing documents in Defendants' possession, custody, and control.

148. **Commonality and Predominance**: There are common questions of law and fact that predominate over any questions affecting only individual members of the Class. These common legal and factual questions, include, but are not limited to, the following:

   a. Whether the Class Vehicles suffer from the Defect.

   b. Whether the likelihood of a cracked cylinder head or a coolant leak constitutes a material fact.

   c. Whether Mazda knew, or reasonably should have known, that the Class Vehicles were defectively designed,

manufactured, marketed, distributed, advertised, warranted, sold, leased, and serviced.

d. Whether Mazda knew or reasonably should have known of the Defect before it sold and leased the Class Vehicles to Plaintiffs and the other members of the Class.

e. Whether Mazda had a duty to disclose the Defect to Plaintiffs and the other members of the Class.

f. Whether Mazda actively and intentionally concealed, failed to disclose and/or omitted material information in its marketing, advertising, sale and lease of the Class Vehicles concerning the existence of the Defect.

g. Whether Mazda actively and intentionally concealed, failed to disclose and/or omitted material information when repairing the Class Vehicles concerning the existence of the Defect.

h. Whether Plaintiffs and the other members of the Class are entitled to equitable relief, including but not limited to a preliminary and/or permanent injunction requiring Mazda to institute a recall and/or pay for all repairs resulting from the Defect or otherwise extend the basic warranty to cover the repairs.

i. Whether Mazda should be declared financially responsible for notifying all members of the Class of the Defect in the Class Vehicles, and for the costs and expenses of repairing the Defect.

j. Whether Mazda is obligated to inform members of the Class of their right to seek reimbursement for having paid for repairs or engine replacement due to the Defect.

k. Whether Mazda violated the consumer protection laws in the New Jersey Consumer Fraud Act (hereinafter, the "CFA"), N.J.S.A. 56:8-1, et seq., and/or the consumer protection laws of the states involving Subclass members.

l. Whether Mazda's conduct violates warranty laws, and other laws as asserted herein.

m. Whether, as a result of Mazda's omissions and concealments of material facts related to the Defect, Plaintiffs and the other members of the Class have

suffered ascertainable losses, and whether Plaintiffs and the other members of the Class are entitled to monetary damages and/or other remedies, and if so the nature of any such relief.

n. Whether Plaintiffs and the other members of the Class are entitled to recover the diminution in value caused by the Defect;

o. Whether Mazda's acts and/or omissions entitle Plaintiffs and the other members of the Class to treble damages, attorneys' fees, prejudgment interest and cost of suit.

149. <u>Typicality</u>: Plaintiffs' claims are typical of the claims of the members of the Class. Plaintiffs and the other members of the Class have suffered similar injury by the same wrongful practices by Mazda. The claims of Plaintiffs and the other members of the Class all arise from the same wrongful practices and course of conduct and are based on the same legal and remedial theories.

150. <u>Adequacy Of Representation</u>: Plaintiffs will fully and adequately assert and protect the interests of the members of the Class and have retained class counsel who are experienced and qualified in prosecuting class actions. Neither Plaintiffs nor their attorneys have any interests that are contrary to or conflicting with the members of the Class.

151. <u>Superiority Of Class Action And Impracticability Of Individual Actions</u>: A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all members of the Class is not economically feasible and is procedurally impracticable. While the aggregate damages sustained by the

members of the Class are in the millions of dollars, and are no less than five million dollars, upon information and belief, the individual damages incurred by each member of the Class resulting from Mazda's wrongful course of conduct are too small to warrant the expense of individual suits. The likelihood of individual members of the Class prosecuting their own separate claims is remote, and, even if every Class member could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases. Individual members of the Class do not have a significant interest in individually controlling the prosecution of separate actions, and individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all of the parties and to the court system because of multiple trials of the same factual and legal issues. Plaintiffs know of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action. In addition, Mazda has acted or refused to act on grounds generally applicable to the members of the Class and, as such, final injunctive relief or corresponding declaratory relief with regard to the members of the Class as a whole is appropriate.

## VII. CLAIMS FOR RELIEF

### FIRST COUNT — OMISSION

**Violations of New Jersey's Consumer Fraud Act,
N.J.S.A. § 56:8-2, et seq.**
(By All Plaintiffs on Behalf of the Nationwide Class,
or Alternatively, By Plaintiffs Clare on behalf of the
New Jersey Class)

152. Plaintiffs on behalf of themselves and all others similarly situated, incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

153. This claim is brought on behalf of the Nationwide Class or alternatively on behalf of Clare and on behalf of the New Jersey Class.

154. Mazda has engaged in deceptive, unconscionable, unfair, fraudulent and/or misleading commercial practices in the advertising, promoting, marketing, distributing, selling and leasing of the Class Vehicles it knew to be defective.

155. Mazda intentionally omitted the fact that its goods, merchandise and/or services did not have characteristics, uses, benefits, or quantities that were advertised and promoted, and failed to disclose that its goods, merchandise and/or services were not of a particular standard, quality or grade.

156. Mazda had a duty to Plaintiffs and the Nationwide Class to disclose the defective nature of the Class Vehicles and the Defect because:

a. Mazda was in a superior position to know the true state of facts about the Defect and repair costs in the Class Vehicles;

b. Plaintiffs and the Nationwide Class could not reasonably have been expected to learn or discover that the Class Vehicles had a dangerous safety defect until after manifestation of the Defect;

c. Mazda knew that Plaintiffs and the Nationwide Class could not reasonably have been expected to learn or discover the Defect and the associated repair costs until the manifestation of the Defect.

157. In failing to disclose the Defect and the associated risks and repair costs, Mazda undertook active and ongoing steps to intentionally conceal the Defects, and has concealed, failed to disclose and/or omitted material facts from Plaintiffs and other members of the Nationwide Class and New Jersey Subclass with respect to the Defect in the Class Vehicles.

158. Mazda intended that Plaintiffs and the other members of the Nationwide Class and New Jersey Subclass would rely upon its acts of concealment and/or omission by purchasing or leasing the Vehicles at full price rather than paying less to purchase or lease the Class Vehicles, or purchasing or leasing other vehicles.

159. Mazda intended that Plaintiff and the other members of the Nationwide Class and New Jersey Subclass would rely upon its

70

acts of concealment and/or omission to avoid replacing the defective parts during the warranty period.

160. Mazda's omissions were objectively deceptive and had the capacity to deceive reasonable consumers under the circumstances. The fact that Mazda knew about and failed to disclose that the Defect in the Class Vehicles was a material fact that a reasonable and/or unsophisticated consumer would attach importance to at the time of purchase or lease. This fact would influence a reasonable consumer's choice of action during the purchase or lease of a vehicle.

161. Such practices contravene the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1, et seq.

162. As a direct and proximate result of Mazda's violations of the NJCFA, Plaintiffs and the other members of the New Jersey Subclass and Nationwide Class have suffered ascertainable losses, which include but are not limited to, the monies they were forced to expend – and will have to expend in the future – to repair and/or replace their vehicles' cylinder heads and associated parts, the diminished value of their vehicles, and the failure to receive the benefit of their purchases or leases, and accordingly were harmed by Defendants' actions in violation of the NJCFA.

**SECOND COUNT – OVER CHARGING**

**(Violations of New Jersey's Consumer Fraud Act,
N.J.S.A. § 56:8-2, et seq.)**
**(By All Plaintiffs on Behalf of the Nationwide Class,
or Alternatively, By Plaintiffs Clare on behalf of the
New Jersey Class)**

163. Plaintiffs, on behalf of themselves and all others similarly situated, incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

164. This claim is brought on behalf of the Nationwide Class or alternatively on behalf of Clare on behalf of the New Jersey Subclass.

165. Mazda has engaged in deceptive, unconscionable, unfair, fraudulent and/or misleading commercial practices in the advertising, promoting, marketing, distributing, selling and leasing of the Class Vehicles at a premium price despite knowing that they were defective.

166. Mazda charged a premium for the Class Vehicles, despite knowing that its goods, merchandise and/or services had characteristics, uses, benefits, or quantities that they did not have, and that its goods, merchandise and/or services were of a particular standard, quality or grade that they were not.

167. In its advertising, promoting, marketing, distributing, selling and leasing of the Class Vehicles, Mazda undertook active and ongoing steps to charge a premium price for the Class Vehicles while intentionally concealing the Defect, and has consciously

concealed, failed to disclose and/or omitted material facts from Plaintiffs and other members of the New Jersey Subclass and Nationwide Class with respect to the Defect.

168. Mazda intended that Plaintiffs and the other members of the New Jersey Subclass and Nationwide Class would rely upon its acts of concealment and/or omission by purchasing or leasing the Class Vehicles at premium price rather than paying less to purchase or lease the Class Vehicles, or purchasing or leasing other vehicles.

169. Mazda's conduct was objectively deceptive and had the capacity to deceive and defraud reasonable consumers under the circumstances. The fact that Mazda knew about and failed to disclose the Defect was a material fact that a reasonable and/or unsophisticated consumer would attach importance to at the time of purchase or lease. This fact would influence a reasonable consumer's choice of action during the purchase or lease of a vehicle.

170. Such practices contravene the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1, et seq.

171. As a direct and proximate result of Mazda's violations of the NJCFA, Plaintiffs and the other members of the Nationwide Class and New Jersey Subclass have suffered ascertainable losses, which include but are not limited to, the premium price the Nationwide Class and New Jersey Subclass paid for the Class

Vehicles, the monies they were forced to expend – and will have to expend in the future – to repair and/or replace the cracked cylinder heads and in some instances the engine, the diminished value of their vehicles, and the failure to receive the benefit of their purchases or leases, and accordingly were harmed by Defendants' actions in violation of the NJCFA.

### THIRD COUNT-COMMON LAW FRAUD

**(By All Plaintiffs on Behalf of Nationwide Class or, Alternatively, on Behalf of the State Subclasses)**

172. Plaintiffs, on behalf of themselves and all others similarly situated, incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

173. This claim is brought on behalf of the Nationwide Class or alternatively the State Subclasses.

174. Mazda consciously and intentionally concealed, failed to disclose and/or omitted a material presently existing or past fact. For example, Mazda did not fully and truthfully disclose to their customers the presence of the Defect. As a result, Plaintiffs and the other members of the Nationwide Class or State Subclasses were fraudulently induced to purchase or lease Class Vehicles containing the Defect and to pay for numerous repairs to Class Vehicles containing the Defect.

175. These concealments and/or omissions were intentionally made by Mazda with knowledge of their falsity, and with the intent

74

that Plaintiffs and the other members of the Nationwide Class or
State Subclasses would rely upon them.

176. Plaintiffs and the other members of the Nationwide Class
or State Subclasses reasonably relied on Mazda's concealments
and/or omissions, and suffered damages as a result.

177. Plaintiff makes the following specific fraud
allegations with as much specificity as possible absent access
to the information necessarily available only to Mazda:

a. Who: Mazda and its yet to be identified employees
concealed the Defect from Plaintiff, the Class, and everyone
in the chain of distribution. Plaintiffs are unaware of,
and therefore unable to identify, the true names and
identities of those individuals at Mazda responsible for
such decisions.

b. What: Mazda knew, or had reason to know, at the time
it sold the Class Vehicles, or was reckless in not knowing,
the fact that the existing defect in the Vehicles would cause
them to experience a Coolant Leak and/or cracked cylinder
head and thereby render the Vehicles unsafe and unable to
perform an essential purpose of providing reliable
transportation before the end of their expected useful
lives, within or outside the applicable warranty periods.

c. When: Beginning no later than July of 2020, Mazda
concealed this material information at all times with

respect to the Class Vehicles, including before the time of sale, on an ongoing basis.

d. Where: Mazda concealed this material information in every communication it had with Plaintiffs, the Class, and everyone in the chain of distribution.  Plaintiff is aware of no document, communication, or other place or thing, in which Mazda disclosed this material information to anyone outside of Mazda.  Such information appears in no sales documents, no displays, no advertisements, no warranties, no owner's manual, nor on Mazda's website.

e. How: Mazda concealed this material information by not disclosing it to Plaintiff, the Class, or anyone in the chain of distribution at any time or place or in any manner, even though it knew this information and knew that it would be important to a reasonable consumer, and even though its omissions with regard to the Defect and consequent premature failures of the Class Vehicles were contrary to its representations about the safety and reliability of the Class Vehicles.

f.  Why: Mazda concealed this material information for the purpose of inducing Plaintiff and Class members to purchase the Defective Vehicles at full price rather than purchasing competitors' vehicles or paying Mazda less for the Class Vehicles, given their limited utility.  Had Mazda disclosed

the truth, Plaintiff (and reasonable consumers) would not have bought the Class Vehicles or would have paid less for them.

### FOURTH COUNT-BREACH OF EXPRESS WARRANTY

**(By All Plaintiffs on Behalf of Nationwide Class or, Alternatively, on Behalf of the State Subclasses)**

178. Plaintiffs, on behalf of themselves and all others similarly situated, incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

179. This claim is brought on behalf of the Nationwide Class of alternatively on behalf of the State Subclasses.

180. Mazda provided all purchasers and lessees of the Class Vehicles with the express warranties described herein, which became part of the basis of the bargain.

181. Accordingly, Mazda warranties are express under state law.

182. The components that must be repaired and/or replaced as a result of the Defect, as well as the other damages caused as a result of the Defect, as described herein, are covered by the express warranties Mazda provided all purchasers and lessors of the Class Vehicles.

183. Plaintiffs and the other members of the Nationwide Class have complied with all obligations and requirements under the Class Vehicles' express warranties or are otherwise excused from performance of said obligations and requirements.

184. Mazda breached these warranties by selling and leasing Class Vehicles which they knew, or reasonably should have known, contained the Defect and required repair or replacement within and outside the applicable warranty periods, and/or refused to honor the warranties by providing free repairs and/or replacements during the applicable warranty period or periods or after the warranty expired, which is when the Defect typically manifested.

185. Plaintiffs notified Mazda of the breach within a reasonable time, and/or was not required to do so because affording Mazda a reasonable opportunity to cure its breach of written warranty would have been futile. Mazda also knew of the Defect and yet chose to conceal it and to not comply with their warranty obligations.

186. As a direct and proximate result of Mazda's breach of the Class Vehicles' express warranties, Plaintiffs and the other members of the Nationwide Class were damaged by, among other things, being forced to expend monies – and will continue to be forced to expend monies – to repair and/or replace their vehicles' components, and diminution in value of their vehicles.

187. Mazda's attempt to disclaim or limit these express warranties vis-à-vis consumers is unconscionable and unenforceable under the circumstances here. Specifically, Mazda's warranty limitation is unenforceable because they knowingly sold a defective product without informing consumers about the Defect and

in most instances the Defect does not manifest itself until after the express warranty expires.

188. The time limits contained in Mazda's warranty period were also unconscionable and inadequate to protect Plaintiffs and members of the Nationwide Class. Among other things, Plaintiffs and the other members of the Nationwide Class had no meaningful choice in determining these time limitations the terms of which unreasonably favored Mazda. A gross disparity in bargaining power existed between Mazda and Plaintiffs and the Nationwide Class, and Mazda knew or should have known that the Class Vehicles were defective at the time of sale and would fail well before their useful lives.

189. Plaintiffs and members of the Nationwide Class have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of Mazda's conduct described herein.

<u>FIFTH COUNT- BREACH OF IMPLIED WARRANTY</u>

(By All Plaintiffs on Behalf of Nationwide Class or,
Alternatively, on Behalf of the State Subclasses)

190. Plaintiffs, on behalf of themselves and all others similarly situated, incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

191. This claim is brought on behalf of the Nationwide Class or alternatively on behalf of the State Subclasses.

192. Mazda was at all relevant times the manufacturer, distributor, warrantor, and/or seller of the Class Vehicles. Mazda knew, or reasonably should have known, of the specific use for which the Class Vehicles were purchased or leased.

193. Mazda provided Plaintiffs and the other members of the Nationwide Class with an implied warranty of merchantability that the Class Vehicles, and any components thereof, are merchantable and fit for the ordinary purposes for which they were sold or leased.

194. Mazda impliedly warranted that the Class Vehicles were of merchantable quality and fit for such use. This implied warranty of merchantability included, among other things: (1) a warranty that the Class Vehicles, and the engines defective parts required for operation were manufactured, supplied, distributed, sold and/or leased by Mazda were safe and reliable for providing transportation, and would not experience loss of power or leakage of coolant while driving, and (ii) a warranty that the Class Vehicles would be fit for their intended use while the vehicles were being operated.

195. Contrary to the applicable implied warranties of merchantability, the Class Vehicles were not fit for their ordinary and intended purpose of providing Plaintiffs and the other members of the Nationwide Class with reliable, durable, and safe transportation.

196. Defendants breached the Class Vehicles' implied warranty of merchantability by selling or leasing Plaintiffs and the other members of the Nationwide Class vehicles, and/or components thereof, that are not fit for their ordinary purpose of providing reasonably reliable and safe transportation because, *inter alia*, the Class Vehicles suffered from the Defect at the time of sale or lease rendering the Class Vehicles unfit for their particular purpose of providing safe and reliable transportation.

### SIXTH COUNT

**(Breach of Written Warranty Under the**
**Magnuson-Moss Warranty Act, 15 U.S.C. § 230 *et seq.*)**
**(By All Plaintiffs on Behalf of the Nationwide Class)**

197. Plaintiffs, on behalf of themselves and all others similarly situated, incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

198. This claim is brought on behalf of the Nationwide Class.

199. Plaintiffs and other members of the Nationwide Class are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

200. Mazda is a "supplier[]" and "warrantor[]" within the meaning of 15 U.S.C. §§ 2301(4)-(5).

201. The Vehicles are "consumer products" within the meaning of 15 U.S.C. § 2301(1).

202. Mazda's express warranty is a "written warranty" within the meaning of 15 U.S.C. § 2301(6).

203. Mazda breached the express warranty by selling and leasing vehicles which they knew, or reasonably should have known, contained the Defect and required repair or replacement within the applicable warranty periods, and/or refused to honor the warranties by providing free repairs and/or replacements during the applicable warranty period or periods.

204. Mazda's breach of the express warranty deprived the Plaintiffs and the other members of the Nationwide Class of the benefits of their bargain.

205. The amount in controversy of Plaintiffs' individual claims meets or exceeds the sum or value of $25. In addition, the amount in controversy meets or exceeds the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit.

206. Mazda has been afforded a reasonable opportunity to cure its breach of written warranty, including when Plaintiffs and other members of the Nationwide Class brought their Class Vehicles in for diagnoses and repair of the Defect.

207. As a direct and proximate result of Mazda's breach of written warranty, Plaintiffs and other members of the Nationwide Class sustained damages and other losses in an amount to be determined at trial. Mazda's conduct damaged Plaintiffs and other members of the Nationwide Class who are entitled to recover damages, consequential damages, specific performance, diminution

in value, costs, attorneys' fees, rescission, and/or other relief as appropriate.

### SEVENTH COUNT-UNJUST ENRICHMENT

**(By All Plaintiffs on Behalf of the Nationwide Class)**

208. Plaintiffs, on behalf of themselves and all others similarly situated, incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

209. The warranty had value which Plaintiffs paid for, and for which Defendants agreed to render services of repair and replacement.

210. The Defendants breached its implied and express warranties in that Class Vehicles were defective with respect to engine materials, workmanship, and manufacture. The Class Vehicles were not of merchantable quality and were unfit for the ordinary purposes for which passenger vehicles are used because of faulty materials being used, workmanship and defects in manufacture and design.

211. The Defendants intentionally, negligently and recklessly and/or fraudulently misrepresented the true characteristics of the Class Vehicles purchased or leased to proposed class representative and class members.

212. The Defendants benefited financially from its breaches of warranty, misrepresentations and fraud as described in this

Complaint. The Defendants denied legitimate class vehicle warranty claims and obtained further unwarranted financial gain.

213. Plaintiffs and the Class sustained monetary damages as described above.

214. It would be unjust and inequitable to allow Defendants to retain its monetary enrichment from its wrongful and unlawful acts.

215. The Plaintiffs and Class request that the Defendants disgorge profits from its wrongful and unlawful conduct and the Court establish a constructive trust funded by the benefits conferred upon the Defendants as result of its wrongful conduct. The Plaintiffs and Class should be designated beneficiaries of the trust and obtain restitution for out-of-pocket expenses caused by the Defendants' conduct.

### EIGHTH COUNT

#### Violation of the Indiana Deceptive Consumer Sales Act, Ind. Code §§ 24-5-0.5-1 et seq.
(By Plaintiff Brent Freburg on his own behalf and on behalf of the Indiana Subclass)

216. Plaintiff Brent Freburg on behalf of himself and all others similarly situated, incorporates by reference the allegations contained in the preceding paragraph of this complaint.

217. Plaintiff Freburg asserts this claim individually and on behalf of the Indiana subclass.

218. Plaintiff Freburg and members of the Indiana subclass are persons within the context of the Indiana Deceptive Consumer Sales Act (herein "IDCSA"), Ind. Code §§ 24-5-0.5-1 et seq. including particularly §24-5-0.5-2(a)(2).

219. Plaintiff Freburg and the members of the Indiana subclass purchased or leased Class Vehicles for personal, family or household use.

220. Mazda is a person within the context of the IDCSA, §24-5-0.5-2(a)(2) and Mazda is engaged in consumer transactions in Indiana within the context of §24-5-0.5-2(a)(1).

221. Mazda is engaged in unfair, abusive and deceptive acts and practices within the context of Ind. Code §§ 24-5-0.5-3(b)(1), (2), (3), (5) and (8) as described elsewhere in this Class Action Complaint.

222. Mazda committed deceptive and unconscionable acts in the course of consumer transactions within the context of IDCSA, §§ 24-5-0.5-10(b) as described elsewhere in this Class Action Complaint.

223. Mazda committed unconscionable, deceptive and unfair trade practices including but not limited to deception, fraud, false pretense, false promise, misrepresentation and knowing concealment, as well as suppression and omission of material facts concerning the Coolant Leak Defect and cracked Cylinder Heads with the intent that Plaintiff Freburg and members of the Indiana

subclass would rely upon their misrepresentations in connection with the sale and/or advertisement of Class Vehicles.

224.   Mazda fraudulently, intentionally, negligently and/or recklessly misrepresented to Freburg and the members of the Indiana subclass the characteristics of the Class Vehicles with respect to materials, durability, and longevity, while Class Vehicles contained a known Coolant Leak Defect as described in this Class Action Complaint.

225. Mazda actively suppressed that the Class Vehicles contained the Coolant Leak Defect.

226. Mazda has denied any liability and has attempted to shift the cost of repairs of the Defective Cylinder Heads Coolant Leaks to the individual vehicle owners.

227. Mazda's deceptive trade practices were likely to deceive a reasonable consumer under the circumstances which Freburg and members of the Indiana Subclass were caused to expend significant monies in purchasing their Class Vehicles and having to replace or repair their Cylinder Heads and/or engines at their own expense.

228. Plaintiff Freburg and the members of the Indiana subclass had no reasonable knowledge that the Class Vehicles contained this Defect. Any reasonable consumer under these circumstances would have relied on the representations of Mazda who alone possessed the knowledge as to the quality and characteristics of the Class Vehicles as to the Coolant Leak Defect.

229.  Mazda fraudulently concealed the Defect within the express warranty period and at all times thereafter, without repairing or replacing the defective parts.

230.  Mazda violated the IDCSA by failing to inform Class Vehicle owners prior to purchase and/or during the warranty period that the Cylinder Heads were defective as to materials, workmanship and manufacture and design and would require replacement and/or repair.

231.  Mazda committed unfair and deceptive trade practices as described in this pleading and repeatedly violated the IDCSA on multiple occasions with its continuous course of conduct including omissions of material fact and misrepresentations concerning the cause of the Coolant Leaks on Class Vehicles owned by Freburg and members of the Indiana subclass.

232.  As a proximate and direct result of MCA's unfair and deceptive trade practices, Plaintiff Freburg and members of the Indiana subclass purchased or leased Class Vehicles and sustained an ascertainable loss and financial harm, in the form of increased repair and replacement costs and incurred other substantial monetary damages and inconvenience as well as increased risk of injury from Class Vehicles overheating or becoming immobilized on the highway.

233. Mazda's conduct offends public policy as established by statutes and the common law and caused substantial injury to Class Vehicle owners without any countervailing benefits to consumers.

234. Plaintiff Freburg and members of the Indiana subclass demand judgment against Mazda for restitution, disgorgement, statutory and actual monetary damages including multiple damages, interest, costs, attorneys' fees, and injunctive relief including declaratory judgment and an order prohibiting Mazda from further deceptive acts and practices described in this complaint.

## NINTH COUNT

### VIOLATIONS OF THE NEW HAMPSHIRE CONSUMER PROTECTION ACT
### N.H. Rev. Stat. Ann. § 358-A:2 ("NHCPA")
(On Behalf of Plaintiff Croteau and the New Hampshire Class)

235. Plaintiffs reallege and incorporate by reference the preceding paragraphs 1-158 as if fully set forth herein.

236. Plaintiff Croteau brings this claim on behalf of the New Hampshire Class under New Hampshire law.

237. Plaintiff Croteau and Mazda are "persons" under the NHCPA. N.H. Rev. Stat. Ann. § 358-A:1(I).

238. Mazda's sale of Vehicles to Plaintiff Croteau and New Hampshire Class members falls within the ambit of "trade" and "commerce." N.H. Rev. Stat. Ann. § 358-A:1(II).

239. The NHCPA makes it unlawful "for any person to use any unfair method of competition or any unfair or deceptive act or practice in the conduct of any trade or commerce" and enumerates

seventeen unlawful types of unfairly competitive or deceptive acts. N.H. Rev. Stat. Ann. § 358-A:2. This statutory list is not exhaustive, and other actions may constitute prohibited conduct as long as they are of the same type as proscribed by the enumerated categories.

240. In selling the Vehicles while omitting or concealing the Coolant Leak and Cylinder Head Defect, Mazda engaged in at least the following violations of the NHCPA:

a. "Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have. . . ";

b. "Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another";

c. "Advertising goods or services with intent not to sell them as advertised."

241. The offending conduct alleged herein occurred in and was part of trade or commerce that had direct or indirect effects on Plaintiff Croteau and the people of New Hampshire.

242. Pursuant to N.H. Rev. Stat. Ann. § 358-A:10(I), Plaintiff Croteau seeks damages on behalf of himself and New Hampshire Class members in the amount of the greater of actual damages or $1,000 for each violation of the NHCPA. Because Mazda's conduct was committed willfully and knowingly, Plaintiff Croteau and the other

New Hampshire Class members are entitled to recover up to three times their actual damages, but no less than two times actual damages.

243. Plaintiff Croteau also seeks attorney's fees and costs, and equitable relief, including an injunction, as the court deems necessary and proper.

**TENTH COUNT**

**VIOLATION OF THE PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW**
**73 P.S. §201-1, et seq**
(On behalf of Plaintiff Cervasio and On Behalf of the Pennsylvania Subclass)

244. Plaintiff, Cervasio, on behalf of himself and all others similarly situated alleges and incorporates the above allegations by reference as if fully set forth herein.

245. Plaintiff is a "person" within the meaning of PUTPA, 73 P.S. §201-2(2).

246. Defendants are "persons" within the meaning of PUTPA, 73 P.S. §201-2(2).

247. PUTPA prohibits engaging in any "unfair or deceptive acts or practices" either at, prior to, or subsequent to a consumer transaction. See 73 P.S. §201-2(4) and 73 P.S. §203. Defendants' conduct constitutes "unfair or deceptive acts or practices" pursuant to the statute, including:

    (a)   Representing that goods have characteristics, uses, or benefits that they do not have, §201-4(v);

90

(b)  Representing that goods are of a particular standard, quality, or grade if they are of another §201-4(vii);

(c)  Failing to comply with the terms of any written … warranty given to the buyer at, prior to, or after a contract for the purchase of goods is made, §201-4(xiv), and

(d)  Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or misunderstanding, §201-4(xxi).

248. Defendants violated PUTPA as set forth above, through false or misleading representations through advertising, warranties, and other express and implied statements of value or safety, and failing to disclose to Plaintiff, Cervasio, and the Pennsylvania Subclass the Defects associated with the Class Vehicles.

249. Defendants engaged in deceptive trade practices when they failed to disclose material information concerning the Class Vehicles which they knew about at the time of sale, allowing unsuspecting purchasers and lessees to continue to buy and lease the Class Vehicles and continue driving defective and dangerous vehicles.

250. The Defendants' unfair or defective acts or practices were likely to deceive reasonable consumers about the true safety and reliability of the Class Vehicles. The Defendants

intentionally and knowingly misrepresented material facts regarding the Class Vehicles with the intent to mislead the Plaintiff, Cervasio, and members of the Pennsylvania Subclass.

251. The Coolant Leak and Cracking Cylinder Defect is material to the Pennsylvania Subclass. Had they known that of this serious Defect they would either not have purchased the Class Vehicle or would have paid or leased them for significantly less than they did.

252. The Pennsylvania Subclass suffered, and continues to suffer, an ascertainable loss caused by the Defendants' failure to disclose material information. They have overpaid for the Class Vehicles and did not receive the benefit of their bargain.

253. The Pennsylvania Subclass is entitled to recover three times their actual damages, costs and reasonable attorneys' fees pursuant to 73 P.S. §201-9.2.

254. Plaintiff, Cervasio, and the Pennsylvania Subclass also seek an order enjoining Defendants' unfair and/or deceptive acts or practices, and a positive injunction instituting a Recall to correct this problem or extending the warranty and reimbursement to Subclass Members who have already paid thousands of dollars on this repair.

## ELEVENTH COUNT

### THE GEORGIA FAIR BUSINESS PRACTICES ACT ("GFBPA")
### GA. CODE ANN. § 10-1-390 *et seq.*
(On Behalf of Plaintiff Long and the Georgia Subclass)

255. Plaintiff Long, individually and on behalf of the other Georgia subclass members, repeats and alleges the allegations contained in the preceding paragraphs as if fully set forth herein.

256. Plaintiff Long brings this claim individually and on behalf of the Georgia subclass members.

257. GFBPA prohibits "[u]nfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce," including, inter alia, "[r]epresenting that goods or services are of a particular standard, quality, or grade . . . if they are of another." GA. CODE ANN. § 10-1-393(a) and (b)(7).

258. By the acts and conduct alleged herein, Defendants committed unfair and deceptive acts and practices in the State of Georgia in violation of the GFBPA by making the misrepresentations and material omissions described above.

259. Plaintiff Long purchased her class vehicle in Georgia and had it serviced in Georgia. Mazda failed to disclose a known material defect and/or material non-conformities upon delivery of the plaintiff's class vehicle and the class vehicles of Georgia subclass members and otherwise engaged in unfair or deceptive

conduct in trade and commerce, including but not limited to, the following:

(a)  At the time of sale and during the warranty period in question, Mazda omitted material information regarding the coolant leak defect and propensity of the cylinder heads to crack and failed to disclose to plaintiff and the Georgia subclass members, the known material information regarding the coolant leaks at the cylinder head and cracked cylinder head as described in detail hereinabove.

(b)  Thereafter, defendant failed to disclose the defects to plaintiff and the Georgia subclass members, either through warnings or recall notices, and/or actively concealed from them the fact that the class vehicles were defective, even though Mazda knew of the Defects in class vehicles.

(c)  Defendant forced plaintiff and the Georgia subclass members, to expend sums of money to repair and/or replace the cylinder heads or in some instances the engine, despite Defendant's prior knowledge of the defects at the time of purchase; and,

(d)  Defendant knowingly omitted, suppressed, and concealed the information concerning the Defect during the sale and during the period of the warranty in question.

260. The foregoing acts, practices, and representations described in this section and throughout the Complaint amounted to a breach of a duty owed to the consuming public in general, as

they were directed at consumers who did purchase or might purchase class vehicles with the Defect.

261. Defendants' unfair and deceptive acts and practices occurred in the conduct of trade and commerce, and has, and continues to pose a risk to consumers and the consuming public generally. If not enjoined and addressed by the court, defendant's unfair and deceptive practices are likely to be a recurring consumer threat to consumers purchasing the defective class vehicles.

262. The foregoing deceptive acts and practices described in this section and throughout this complaint were unfair and deceptive in a material way because they fundamentally misrepresented defendant's goods and services, and caused plaintiff and members of the Georgia subclass to reasonably believe that defendant's goods and services had characteristics that they did not have, and that its products, including the class vehicles which contained defective cylinder heads resulting in coolant leaks, were of a particular standard or quality which they were not.

263. Plaintiff Long and members of the proposed Georgia subclass were injured as a direct and proximate result of defendant's violation of the GFBPA as they expended monies for purchase of the class vehicles which they would not have purchased

had they known of their true quality and/or not been misled, and did not receive products of the represented standard and quality.

264. Plaintiff Long and members of the proposed Georgia subclass were injured as a direct and proximate result of defendant's violation of the GFBPA which caused class members the injury and/or damages described herein, including but not limited to time and expenses related to the repair and replacement of the defective cylinder heads which caused coolant leaks.   Plaintiff Long and the Georgia subclass have also been injured as a result of the diminished value of the class vehicles containing the defective parts.

265. Defendant knew or should have known that the class vehicles contained the Defect that when failing could cause significant damage to the class engine.

266. Furthermore, pursuant to GA. CODE ANN. § 10-1-399(b), a written demand for relief from plaintiff's counsel, on behalf of herself and other similarly situated owners and lessees of class vehicles in Georgia, was delivered to defendant.   The letter identified the claimant and reasonably described the unfair or deceptive acts and practices relied upon and the injuries suffered.

267. By virtue of defendant's misrepresentations and willful omissions, as well as its intentional violations of the GFBPA, plaintiff and members of the proposed Georgia subclass and Nationwide Class have suffered damages.   Accordingly, plaintiff

and the proposed Georgia subclass seek to enjoin the unlawful acts and practices described herein; to recover actual damages; an award of treble damages; an award of punitive damages; and reasonable attorneys' fees and costs.

**TWELFTH COUNT**

**VIOLATION OF THE GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (GA. CODE ANN § 10-1-370 _et seq.._)**
(On Behalf of Plaintiff Long and the Georgia Subclass)

268. Plaintiff Long, individually and on behalf of the other Georgia subclass members, repeats and realleges the allegations contained in the preceding paragraphs as if fully set forth herein.

269. Plaintiff Long brings this claim individually and on behalf of the Georgia subclass members.

270. Georgia's Uniform Deceptive Trade Practices Act (Georgia UDTPA) prohibits "deceptive trade practices," which include "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have"; "[r]epresenting that goods or services are of a particular standard, quality, or grade … if they are of another"; and "[a]dvertising goods or services with intent not to sell them as advertised." GA. CODE ANN. § 10-1-373(a).

271. Defendant Mazda, plaintiff Long, and Georgia subclass members are "persons" within the meaning of GA. CODE ANN. § 10-1-371(5).

272. At the time of sale and during the warranty period in question, defendant represented that the class vehicles were of high quality and were sold without serious defects that could result in the need to replace the engine during the expected useful life of the vehicles.

273. Defendant Mazda failed to disclose to plaintiff and the Georgia subclass members the known material information regarding the Defect as described in detail in this class action complaint.

274. As a direct and proximate result of defendant's violation of the UDTPA plaintiff Long and the Georgia subclass have been injured including incurring time and expenses related to repair and replacement of defective cylinder heads and replacement of damaged engine components, as well as diminished value of the class vehicles containing the Defect.

275. Plaintiff Long and members of the proposed Georgia subclass seek an order enjoining defendant's unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under GA. CODE ANN. § 10-1-373.

**THIRTEENTH COUNT**

**VIOLATION OF VIRGINIA'S CONSUMER PROTECTION ACT, VA. CODE ANN. §§59.1-198, -200**
(On Behalf of Plaintiff Foley and on behalf of the Virginia Subclass)

276. Plaintiff Foley on behalf of herself and all others similarly situated, incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

277. Plaintiff Foley asserts this claim individually and on behalf of the Virginia subclass.

278. Plaintiff and members of the Virginia Subclass are consumers within the meaning of Virginia's Consumer Protection Act; Va. Code Ann. §§59.1-198, -200 ("Virginia Act").

279. The Virginia Act expressly prohibits "Misrepresenting that goods or services are of a particular quality standard, quality, grade, style or model" and/or "using any other deception, fraud, false present, false promise or misrepresentation in connection with a consumer transaction."

280. Mazda engages in "trade" and commerce" generally and as it pertains to Mazda vehicle distribution for sale to consumers within various states.

281. As described above in detail and incorporated herein by reference, Mazda engaged in unfair and deceptive acts in violation of the Virginia Act.

282. Mazda's representations regarding the durability and reliability of their vehicles are material to a reasonable consumer and were designed to affect consumer decisions and conduct.

283. Mazda understood and intended that the representations about the durability and reliability would influence consumer behavior.

284. Plaintiff Foley and the Virginia subclass purchased Mazda's for personal, family or household use. The practices

discussed above constitute unfair competition or unfair, unconscionable, deceptive or unlawful acts or business practices in violation of the Virginia Act.

285. The foregoing unfair and deceptive conduct, directly, foreseeably and proximately caused Plaintiff Foley and the Virginia subclass to suffer ascertainable losses when they paid a premium for vehicles with undisclosed defective cylinder heads leading to coolant leaks paying above and beyond what they should have paid had they known about Mazda's false and misleading representations and omissions.

286. Plaintiff Foley and the Virginia Subclass are entitled to recover damages and other appropriate relief.

<u>FOURTEENTH COUNT</u>

<u>BREACH OF IMPLIED WARRANTY UNDER NORTH CAROLINA LAW</u>
(On Behalf of Plaintiff Carter and on behalf of the
North Carolina Subclass)

287. Plaintiff, Carter, on behalf of himself and all similarly situated persons, incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

288. Plaintiff brings this claim individually and on behalf of a Class of North Carolina residents who formerly or currently own or lease one or more of the Class Vehicles, in the event the Court declines to certify a nationwide class under New Jersey law.

289. Mazda Vehicles were subject to an implied warranty of merchantability and an implied warranty of fitness for a particular

purpose, as described herein.

290. Under North Carolina common and statutory law, a warranty of merchantability and a warranty of fitness for a particular purpose are implied in all sales transactions where the seller has reason to know the particular purpose for which the product is to be used and that the consuming public is relying on the skill or judgment of the seller to furnish a suitable product. A warranty of merchantability is a warranty implied by law that a product is fit for the ordinary purposes for which it is used, is properly labelled, and conforms to the representations made about it. See N.C. Gen. Stat. § 25-2-314. A warranty of fitness for a particular purpose is a warranty implied by law that a product is fit for its intended use. See N.C. Gen. Stat. § 25-2-315.

291. Mazda breached the implied warranties in the manner described above.

292. The implied warranties were part of the basis of the bargain at the time of sale, as required by federal and state law.

293. Plaintiff, Carter, and other Class members have been damaged by Mazda's breaches of the implied warranties in the manner described above.

294. Any limitation period, limitation on recovery or exclusions of implied warranties are unconscionable within the meaning of Section 2-302 of the Uniform Commercial Code and, therefore, are unenforceable, in that, among other things, 1)

Defendant knew of should have known of the latent defect arising through the use of the defective cylinder heads and 2) Plaintiff and members of the Class lacked a meaningful choice with respect to the terms of the limitation on implied warranties due to unequal bargaining power and a lack of warranty competition. See N.C. Gen. Stat. § 25-2-302.

**FIFTEENTH COUNT**

**VIOLATION OF THE NORTH CAROLINA UNFAIR OR DECEPTIVE TRADE PRACTICES ACT, N.C. GEN. STAT. § 75-1.1, *ET SEQ.***
(On Behalf of Plaintiff Carter and on behalf of the North Carolina Subclass)

295. Plaintiff, Carter, on behalf of himself and all similarly situated persons, incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

296. Plaintiff brings this claim individually and on behalf of a Class of North Carolina residents who formerly or currently own or lease one or more of the Class Vehicles, in the event the Court declines to certify a nationwide class under New Jersey law.

297. Defendant Mazda sold Vehicles, which were manufactured or assembled with defective cylinder heads which caused coolant leaks, to Plaintiff and the Class with knowledge that the Vehicles were defective.

298. The defects in Defendant Mazda's Vehicles were latent and not discoverable by reasonably diligent consumers.

299. Despite its knowledge of the defects, Defendant Mazda failed to disclose the existence of the defects to Plaintiff and the Class.

300. Despite its knowledge of the defects, Defendant Mazda continued to sell its Vehicles with defective cylinder heads to consumers subject to unconscionably limited express and implied warranties.

301. Defendant Mazda's conduct as described herein was deceptive and unfair to consumers. Defendant Mazda's failure to disclose the defects to consumers had the capacity and tendency to deceive. Defendant Mazda's failure to disclose-and its attempts to conceal-the defects to consumers was immoral, unethical, unscrupulous and substantially injurious to consumers. *See Walker v. Fleetwood Homes of N.C.,* 627 S.E.2d 629, 631-32 (N.C. Ct. App. 2006).

302. Defendant Mazda's knowingly deceptive and unfair conduct constitutes a breach of warranty with substantial aggravating circumstances under the North Carolina Unfair or Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1, *et seq. See Walker,* 627 S.E.2d at 632.

303. As a direct and proximate result of Mazda's violation of the Unfair or Deceptive Trade Practices Act, Plaintiff and the Class have suffered damages.

**SIXTEENTH COUNT**

**VIOLATION OF THE TEXAS DECEPTIVE TRADE PRACTICES ACTION**
(On Behalf of Plaintiff Hardy and on behalf of the
Texas Subclass)

304. Plaintiff Hardy individually and on behalf of all others similarly situated alleges and incorporates the above allegations by reference as if fully set forth herein.

305. Plaintiff Hardy asserts this claim individually and on behalf of the Texas Subclass.

306. Plaintiff Hardy is a consumer as defined in the Texas Deceptive Trade Practices Act (DTPA), Tex. Bus. & Comm. Code § 17.41, et seq.

307. Mazda can be sued under the DTPA, because the DTPA allows a plaintiff to bring a cause of action against any person who uses or employs false, misleading, or deceptive acts or practices. *See* Tex. Bus. & Com. Code §17.50(a)(1). Corporations are defined to be included as persons. *See* Tex. Bus. & Com. Code §17.45(3). Mazda conducts trade and commerce in Texas.

308. The wrongful conduct of Mazda, as described herein, constitutes one or more violations of the Texas DTPA, and constitute acts detailed in Tex. Bus. & Com. Code§ 17.46, including, including but not limited to the following:

> a. False, misleading, unfair and/or deceptive acts or practices in the conduct of any trade or commence ,including, but not limited to, representing that certain models of Mazda's were of superior quality and had characteristics or benefits which they do not

have; and had characteristics and/or benefits that it did not have; representing that these models were of a particular standard or quality that it was not; and/or failing to disclose known information about the manufacturing and design defects related to the Coolant Leak Defect and cracking cylinder heads, in order to induce consumers, such as Plaintiff, into a transaction that the consumers would not have entered into had the information been disclosed;

b. Breach of an express and/or implied warranty; and

c. Unconscionable acts or practices involving the design, manufacture, testing, marketing, promotion, distribution, and sale of Class Vehicles.

309. Plaintiff Hardy and other members of the Texas Subclass relied on Mazda's false, misleading and/or deceptive acts and practices to their detriment.

310. Mazda acted unconscionably in failing to provide the proper course of action to remedy the defective Mazdas *See* Tex. Bus. & Com. Code §17.50(a)(3). More specifically, Mazda's conduct was to Plaintiff Hardy and Texas Class Members' detriment. Mazda took of advantage of the lack of knowledge, ability and experience of Plaintiff and the class members to a grossly unfair degree by misrepresenting and deceiving customers into believing that they were purchasing or leasing Class Vehicles that would safely function without experiencing a coolant leak Defect that resulted in the shutdown of the vehicle and required the costly out of pocket replacement of cylinder heads or the engine  within just a

few years of purchase which would not be covered by the warranty. This Defect has a great impact on the use and safety of the Class Vehicles.

311. Defendants were aware of this Defect prior to the first sale of these Vehicles. Thus, Defendants knew at the time they made their representations and omission that they were false. Despite this knowledge, Defendants took advantage of Plaintiff Hardy and the Texas Sub-Class by aggressively marketing the Class Vehicles and inducing the Texas class to purchase them.

312. As a result there was a gross disparity between the value received and the consideration paid for the Class Vehicles which were defective, and not of merchantable quality or fit for their ordinary purpose in relation to the consideration paid. Plaintiffs and the Texas class members relied on Defendants' conduct to their detriment given that Mazda knew of this Defect at the time of sale while Plaintiffs and the Class were relying upon Defendants' skill or judgment to furnish Vehicles of merchantable quality.

313. In doing the acts alleged above, Defendants breached implied warranties in violation of Texas Business and Commerce Code §17.50(a)(2).

314. Defendants' acts and/or omissions in violation of the Texas DTPA were a producing cause of Plaintiff Hardy's and the Texas Subclass's injuries, including but not limited to economic

damages and risk of physical injury to Plaintiff and his family as well as to the Texas Class.

315. Defendants' wrongful conduct was committed knowingly and intentionally as set forth in Section 17.45(9) and 17.45(13) of the Act making Mazda liable for treble damages under the Texas DTPA. Plaintiff and the class also seeks restitution of the money the Defendants acquired in violation of the DTPA, threefold the economic damages sustained, and an order enjoining Defendants from further employing the practices described herein and ordering Mazda to recall the defective Class Vehicles, plus reasonable and necessary attorneys' fees, and costs of court, in accordance with Tex. Bus. & Com. Code §17.50.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs on behalf of themselves and on behalf of the Nationwide Class, New Jersey Subclass, Indiana Subclass, New Hampshire Subclass, Pennsylvania Subclass, Georgia Subclass, Virginia Subclass, North Carolina Subclass and Texas Subclass prays for judgment against Defendants, Mazda Motor of America, Inc and Mazda Motor Corporation as follows:

1. An Order pursuant to Fed. R. Civ. P. 23 (c) granting Certification of the proposed Nationwide Class, New Jersey Subclass, Indiana Subclass, Pennsylvania Subclass, Georgia Subclass, Virginia Subclass, North Carolina and Texas Subclass, and appointing and designating the law firm, Nagel Rice, LLP to

represent the Classes as class counsel pursuant to Fed. R. Civ. P. 23(g);

2.     All   recoverable   compensatory,   statutory   and   other damages  sustained  by  Plaintiffs  and  the  other  members  of  the Nationwide   Class,   New   Jersey   Subclass,   Indiana   Subclass, Pennsylvania Subclass, Georgia Subclass, Virginia Subclass, North Carolina and Texas Subclass.

3.     Restitution and disgorgement of all amounts obtained by Mazda Motor of America, Inc and Mazda Motor Corporation as a result of its misconduct, together with interest thereon, from the date of payment, to the victims of such violations;

4.     Restitution of incidental expenses incurred by proposed Class Representatives and Class Members including the cost of rental vehicles or substitute transportation;

5.     Actual, treble, and/or statutory damages for injuries suffered by Plaintiffs and the other members of the Classes and Subclasses in the maximum amount permitted by applicable law;

6.     An  Order,  among  other  things:  (a)  requiring  Mazda  to immediately  cease  its  wrongful  conduct,  as  set  forth  above;  (b) enjoining  Mazda  from  further  wrongful  practices  concerning  the distribution, advertisement, marketing, warranting, sale and lease of  the  Class  Vehicles;  (c)  requiring  Mazda  to  make  all  repairs and/or  replacements  necessitated  as  a  result  of  the  Defect  in  the vehicles purchased or leased by Plaintiffs and the other members

of the Nationwide Class, and State Subclasses, (d) requiring Mazda to refund to Plaintiffs and all members of the Nationwide Class and State Subclasses, the funds they were forced to expend on repairs and/or replacements as a result of the Defect; (e) holding Mazda liable to all members of the Nationwide Class and State Subclasses, for the diminution in value to the Class Vehicles which have not yet experienced the Defect, and (f) a declaration that Mazda is financially responsible for notifying all members of the Nationwide Class, State Subclasses, of the Defect, recalling the Class Vehicles and/or extending their warranties to cover the Defect;

7.    Statutory pre-judgment and post-judgment interest on the Class damages;

8.    Injunctive and declaratory relief pursuant to Fed. R. Civ. P. 23(b)(2) declaring that going forward, Mazda shall extend the warranty to cover the Defect or institute a voluntary recall.

9.    Payment of reasonable attorneys' fees and costs as may be allowable under applicable law; and

10.    Such other relief as the Court may deem just and proper.

<u>**DEMAND FOR JURY TRIAL**</u>

Plaintiffs hereby demand a trial by jury on all causes of action so triable.

DATED: May 14, 2024

NAGEL RICE, LLP
*Attorneys for Plaintiffs and the Putative Class*

By: <u>s/ *Bruce H. Nagel*    </u>
Bruce H. Nagel
Randee M. Matloff
103 Eisenhower Parkway
Roseland, New Jersey 07068
973-618-0400
bnagel@nagelrice.com
rmatloff@nagelrice.com

Joseph Santoli, Esq.
340 Devon Court
Ridgewood, New Jersey 07450
201-926-9200
josephsantoli002@gmail.com